METROPOLITAN ELECTRIC COMPANY, INCORPORATED, Appellee,

v.

MEL–JAC CONSTRUCTION COMPANY, Appellant.

No. 49905.

Court of Appeals of Oklahoma, Division 2.

Jan. 31, 1978.

Released for Publication by Order of Court of Appeals Feb. 23, 1978.

Max D. Watkins, Norman & Watkins, Muskogee, for appellee.

Stephen J. Scherer, Wilcoxen, Cate & Scherer, Muskogee, for appellant.

BRIGHTMIRE, Judge.

A subcontractor who did the electrical work on a new Sambo's Restaurant in Muskogee, Oklahoma, sued the general contrac-

tor for more than $18,000—the amount alleged to be an unpaid balance due for labor and materials furnished. Following a non-jury trial, the court awarded the subcontractor, Metropolitan Electric Company, $12,530.93 plus interest and $1,203.93 attorney's fee against the general contractor, Mel-Jac Construction Company. The latter appeals contending the judgment is excessive in that the number of man-hours it requires Mel-Jac to pay for exceed the number it was necessary for Metropolitan to use in completing the job.

## I

After rejecting Metropolitan's bid to do the electrical work in question for $28,000 Mel-Jac signed what may be called a "cost-plus" or "cost-of-completion" type contract on March 21, 1974 which authorized Metropolitan to do the work and specified it would be paid for "all material bought and invoices furnished for, and/or all material bought by Mel-Jac—15% of cost for profit and overhead" and for:

"Labor

"Foreman at $12.56 per hr.

Journeyman at $11.98 per hr.

Helper at $8.94 per hr.

Profit & overhead included in hourly rate."

Metropolitan began work soon after the contract was signed and from time to time submitted invoices for progress payments. By August it had received a total of $18,-796.07 and at that point Mel-Jac decided the costs had already exceeded a reasonable amount for the job and declined to pay any more.

## II

At trial Metropolitan introduced evidence of the material it used on the job and that it paid for 1,842.5 man-hours of labor installing it. Mel-Jac did not dispute the quantity or cost of the material used but only the number of man-hours Metropolitan said it took to complete the electrical work. To sustain its position Mel-Jac adduced evidence in the form of expert testimony that based upon experience gained from building similar Sambo structures—particularly in Texas—a reasonable number of man-hours required to wire the building was between 600 and 624. According to Mel-Jac this evidence was not contradicted and therefore should have been the basis for the trial court's judgment. And since it is not, concludes Mel-Jac, the judgment suffers from the lack of sufficient supporting evidence.

## III

■ Strangely enough we are unable to locate a case dealing with the precise point raised by Mel-Jac. But looking at this type of an agreement from the standpoint of logic, it seems to us a condition is implicit in cost-plus contracts that the subcontractor owes the contractor a duty to make every reasonable effort to minimize costs and thus may recover only for such material and labor which it is necessary to use to complete the job, absent of course, a contractual expression to the contrary.

With this conclusion Metropolitan does not really disagree. Its answer to Mel-Jac's complaint is that it did present sufficient competent evidence in the form of detailed employee time-work sheets and payroll records which, says Metropolitan, are significantly corroborated by the fact that Mel-Jac's foreman, who supervised the work, never once complained about the employment of any unnecessary labor or of any time wastage by those on the job, although he did complain one time about too many hours being charged for one electrician resulting in a 12-hour "adjustment" being made. Moreover, continues Metropolitan, this job differed materially from those Sambo projects cited by Mel-Jac requiring fewer man-hours in that in Muskogee Metropolitan had to hire union labor on the construction in question, comply with certain unusual specifications, and conform to stiffer building code requirements. For example, the Muskogee code required use of copper wire which takes longer to pull than aluminum wire allowed by some Texas building codes.

In reviewing this record there are two circumstances, we think, one must take into consideration: (1) the absence of any attack on the sufficiency of the evidence either at the close of plaintiff's case in chief or at the close of all evidence adduction; (2) the fact that the lengthy transcript discloses the court admitted all the defensive evidence Mel-Jac offered in an effort to controvert the prima facie case made out by Metropolitan.

This brings us to the determinative question in the case. It is not, as Mel-Jac contends, whether the finding of the trial court is clearly against the weight of the evidence, but—because the action is one at law—whether the evidence is sufficient to support the trial judge's finding.

■ We find that it is. The time, payroll, and billing records of Metropolitan showing 1,842.5 man-hours were used coupled with supporting testimony implying that it was necessary to use that many make out a prima facie case for recovery. Mel-Jac refers us not to any direct or hard evidence that they were billed for unnecessary labor costs, but only to indirect evidence of average man-hours used in similar projects from which the fact finder could infer excessive man-hours were charged to subject project. The trial judge apparently did conclude that the number of man-hours Metropolitan sought payment for was excessive and therefore found that the subcontractor was entitled to recover only about two-thirds of what it asked for. In effect, then, Mel-Jac's complaint has to be not that the trial court failed to find that the number of man-hours charged for by Metropolitan was excessive but that he failed to find the number of hours was even more excessive than he did. Since we think there is evidence to support the trial judge's finding we, as appellate reviewers, are not at liberty to impugn it.

## IV

Mel-Jac's second complaint is that the trial court awarded Metropolitan 10 percent interest on the $12,203.93 judgment from October 3, 1974, the postcompletion date on which the contractual balance became due. The argument is that the law allows interest from the day a right to recover becomes vested in plaintiff only where the amount recoverable is "liquidated"—that is where the amount due has been agreed to or fixed by operation of law—and that here since defendant disputed the labor costs the amount due was uncertain requiring plaintiff to prove the necessity of the labor expense and the court to determine the amount due. This the court did, adds Mel-Jac, and he found there was due an amount less than that sought by plaintiff.

■ We agree with defendant. In the first place the trial court allowed 10 percent interest which exceeds the legal rate of interest (six percent) set by 15 O.S.1971 § 266, and the contract does not contain a higher interest agreement. In the second place 23 O.S.1971 § 6 authorizes prejudgment interest only where the damages sought are "certain, or capable of being made certain by calculation." This section has been held to apply to contractual obligations. *Allison v. Allen*, Okl., 326 P.2d 1059 (1958). Here the amount plaintiff was entitled to recover was not agreed to and was uncertain until determined by the court.

The judgment is therefore modified by deleting the allowance of prejudgment interest.

## V

Lastly Mel-Jac contends that it was error to allow Metropolitan an attorney's fee not because the amount awarded was unreasonable but because "there is nothing in the evidence as to the value of the services rendered by Metropolitan's attorney or anything in evidence as to the reasonableness of such fee." *Sarkeys v. Haas*, Okl., 402 P.2d 894 (1965) is cited in support of its theory that in cases coming within the purview of 12 O.S.1971 § 936—authorizing the prevailing party to recover attorney fees in an action to recover on, among other things, a "contract . . . for labor or services" —the trial court is without authority to

render judgment for an attorney's fee without evidence of the value of the attorney's services.

 The rule adopted in *Sarkeys* followed one applied for years in lien foreclosure cases and in the abstract rests on a sound base. But it certainly does not furnish a basis for disturbing the attorney's fee award here for the simple reason the record discloses that the trial judge had before him an abundance of evidence from which he—one who himself possessed expert knowledge of the value of lawyer services—could determine what at least a minimum attorney's fee would amount to. In fixing a reasonable fee the court was required to consider the amount involved in the litigation, the intricacies of the facts and law of the case, the time spent and the results accomplished. *Walls v. Russell*, Okl. App., 519 P.2d 936 (1974). All these things the trial judge knew except, perhaps, the full extent of what out of court time was spent. We, of course, cannot presume the trial court attempted to compensate for unproved professional services. In view of the services we know, from looking at the record, that Metropolitan's attorney rendered, we cannot say the amount awarded by the trial court is unreasonable. As we said earlier Mel-Jac does not either.

The judgment appealed from is affirmed save as to the allowance of interest.

Affirmed as modified.

NEPTUNE, P. J., and BACON, J., concur.