**JOHN A. HENRY & CO., LTD.,**
**Plaintiff-Appellee,**

v.

**T.G. & Y. STORES CO.; McCrory Corporation; Sterik Co.,**
**Defendants–Appellants,**

and

**John A. Henry, III, an individual,**
**Counterclaim–Defendant.**

**No. 90–6110.**

United States Court of Appeals,
Tenth Circuit.

Aug. 12, 1991.

---

John T. Edwards (Randall A. Breshears, also of Monnet, Hayes, Bullis, Thompson & Edwards, with him on the briefs), Oklahoma City, Okl., for defendants-appellants.

Anton J. Rupert (Mark S. Grossman and Robert E. Bacharach, also of Crowe & Dunlevy, with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before LOGAN, BRIGHT[*] and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Defendants, T.G. & Y. Stores Co., McCrory Corporation, and Sterik Co., appeal a jury verdict awarding actual and punitive damages to John A. Henry & Co., Ltd. (Henry) for breach of contract and wrongful interference with contract. On appeal, defendants contend that the district court erred by (1) submitting Henry's contract claim to the jury; (2) failing to grant a directed verdict or judgment n.o.v. on Henry's wrongful interference with contract claim; (3) permitting an award of punitive damages in excess of actual damages; and (4) giving the jury copies of the instructions the day before their deliberations. We affirm.

**I**

This case arose out of a 1979 lease agreement for a T.G. & Y. store at a shopping center owned by Henry in Yukon, Oklahoma. Henry promised to build, at its expense, a 60,000 square-foot building in exchange for T.G. & Y.'s promise to enter into a twenty-year lease. To enable Henry to obtain funding for the building's construction, the lease prohibited T.G. & Y. from halting rental payments, even in the event of a landlord default, for as long as Henry owned the property. By pledging the lease as security, Henry was able to borrow approximately $1.5 million to construct the building.

T.G. & Y. first occupied the building in 1981 and began making the required rental payments. In 1986, McCrory Corporation acquired T.G. & Y., including all of its stores throughout the United States.[1] As part of a change in business philosophy and to strengthen itself financially, McCrory planned to close all of the T.G. & Y. large family stores, including the one on the Henry lease, and focus only on smaller store operations. McCrory closed 202 stores but was able to sublease or assign only 46 of the stores' leases. McCrory then employed Sterik Company to address the remaining lease obligations.

Sterik attempted to terminate the majority of the remaining leases by withholding rent and offering lump-sum payments in exchange for lease cancellations. McCrory sent Henry a closure notice and offered a cash payment to cancel the lease. The parties failed to reach an agreement, however, and in March 1987, McCrory withheld its $14,250 monthly rental payment. McCrory then wrote a letter to Henry which contained several false allegations of maintenance defects,[2] sending a copy of this letter to Southland Insurance Company (Southland), Henry's lender. When Southland received this letter it insisted that Henry correct any existing defects.

McCrory again withheld the rent for the month of April 1987. Henry was forced to request relief from Southland because it was unable to pay the mortgage without McCrory's rental payments. At McCrory's request and in exchange for payment of the March and April rent, Henry met with a consultant paid by a corporation set up by Sterik to discuss cancellation of the lease, but again no agreement was reached. Thereafter, McCrory withheld rent from July 1987 to March 1988. Henry avoided foreclosure during this period by restructuring its loan.

---

[*] The Honorable Myron H. Bright, United States Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

**1.** T.G. & Y. has apparently been dissolved and its assets are now a part of McCrory Corporation. It is conceded that "their interests are identical." Appellants' Opening Brief at 2 n. 1.

Hereafter in this opinion we use McCrory for T.G. & Y. when referencing any correspondence or actions after the acquisition.

**2.** These allegations, even if true, did not excuse McCrory from paying rent under the lease.

Because of Henry's continued persistence in holding McCrory to the terms of the lease, McCrory resumed rental payments and in March 1988, paid all back rent due.[3] Thereafter, Henry filed the instant action, alleging breach of the lease agreement and wrongful interference with Henry's mortgage contract. At the conclusion of trial the jury found for Henry on both claims, awarding $100,000 actual damages and $2,000,000 punitive damages in connection with the interference with contract claim.

## II

Defendants contend that Henry's contract claim should not have been submitted to the jury because Henry presented no competent evidence of damages. Defendants argue that the evidence that their actions diminished the value of the property is too speculative absent proof that Henry attempted to sell the property, and that the terms of the lease do not allow an award of interest on the withheld rental payments.

■ In Oklahoma, the measure of damages from a breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby...." Okla.Stat.Ann. tit. 23, § 21. The amount, however, must be ascertainable "in some manner other than by mere speculation, conjecture or surmise, and by reference to some definite standard." *Great Western Motor Lines v. Cozard,* 417 P.2d 575, 578 (Okla.1966) (citations omitted); *see also* Okla.Stat.Ann. tit. 23, § 21 ("No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin.").

■ In the instant case, Henry's evidence of diminished value was sufficiently certain in nature and origin to warrant submission of Henry's contract claim to the jury. James Hoyt, an experienced real estate appraiser, testified that the value of

the property was diminished by approximately $223,000 to $280,000 because McCrory's history as a defaulting, recalcitrant tenant would make the property much more difficult to sell. Although Hoyt's damage calculations were not based on actual efforts to sell the property in the market place, such direct and specific evidence is not required. "[W]hen a breach of a contractual obligation with resulting damages has once been established, the mere uncertainty as to the exact amount of damages will not preclude the right of recovery. It will be sufficient if the evidence shows the extent of the damages as a matter of just and reasonable inference." *Larrance Tank Corp. v. Burrough,* 476 P.2d 346, 350 (Okla.1970) (citations omitted). After examining the record, we are convinced that the extent of damages can be reasonably inferred from Henry's evidence on diminution in value. *See Hornwood v. Smith's Food King No. 1,* 105 Nev. 188, 772 P.2d 1284, 1286 (1989) (damages inferred from diminution in value of shopping center when anchor tenant left).

■ Henry's claim for interest on the withheld rent was also proper in this case. Nothing in the lease agreement limits recovery of interest, and Oklahoma law allows an aggrieved party in a breach of contract case to have interest from the day its right to recover becomes vested, provided the amount recoverable is fixed. *See Metropolitan Elec. Co. v. Mel–Jac Constr. Co.,* 576 P.2d 323, 326 (Okla.Ct.App.1978); *see also* Okla.Stat.Ann. tit. 23, § 22 ("The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."). In this case, Henry's right to recover interest vested each month McCrory failed to pay the rent specified in the lease. Therefore, the district court did not err in permitting Henry to present evidence of lost interest.

## III

■ Defendants next contend that the district court erred in failing to grant their

---

**3.** Through its employment of Sterik, however, McCrory was able to reduce its other lease liabilities by over $41.5 million.

motions for directed verdict and for judgment n.o.v. on Henry's wrongful interference with contract claim. Defendants argue that Henry's tort claim, as presented, is not based on a viable theory of recovery in Oklahoma.

That argument centers around § 766A of the *Restatement (Second) of Torts,* which states:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive and burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

Defendants contend that Henry should not have been allowed to proceed under § 766A because no Oklahoma court has adopted this theory of recovery.

We are satisfied that a claim under § 766A is actionable in Oklahoma. Oklahoma has recognized a cause of action for malicious or intentional interference with contractual relationship. *See Overbeck v. Quaker Life Ins. Co.,* 757 P.2d 846, 848 & n. 2 (Okla.Ct.App.1984). Although no Oklahoma court has ruled on the viability of a claim under § 766A, intentional interference with another's performance of its own contract has been "consistently recognized" in other states as an actionable form of the more general tort of interference with a contractual relationship. *Restatement (Second) of Torts,* § 766A comment b. Moreover, under § 766A, the interference must be both intentional and improper, *id.* comment e, which is consistent with Oklahoma's requirement to show tortious interference with contractual relations, *see Overbeck,* 757 P.2d at 848. Accordingly, the district court did not err in permitting Henry to proceed under § 766A.

■ Defendants contend that even if Oklahoma would recognize a cause of action under § 766A, Henry failed to prove that he was damaged by the tort. Defendants argue that the damage evidence presented at trial supported, if at all, only Henry's breach of contract claim; it did not show that their contacts with Southland resulted in any increased cost or reduction in benefits.

We find sufficient evidence in the record of damages to warrant submitting Henry's tort claim to the jury. Through Sterik, McCrory undertook a precisely conceived plan to eliminate leases by exerting financial pressure on the landlords. In Henry's case, McCrory withheld rent and reported false claims of default to Henry's lender in an apparent effort to jeopardize Henry's standing with Southland and to force Henry to capitulate. As discussed above, Henry presented evidence at trial that the value of the leased property diminished as a result of these actions. Based on this evidence and defendants' overall plan, a jury could find that they intentionally interfered with Henry's mortgage contract with Southland and that some of the resulting damage was attributable to this interference. The district court did not err in denying defendants' motions for directed verdict and judgment n.o.v. motion on the intentional interference with contract claim.

■ For the same reason, we reject defendants' argument that the district court improperly attributed evidence of damages for the breach of contract claim as evidence of damages for Henry's tort claim for determining the availability of punitive damages. Henry asserted two claims—breach of contract and intentional interference with contract. Henry, however, sought only one remedy—damages. Henry's damage evidence, which was characterized as diminution in value, was properly offered as proof of damages for both claims. *See Barnes v. McKinney,* 589 P.2d 698, 700–01 (Okla.Ct.App.1978). Accordingly, an instruction on punitive damages was warranted in this case. *See Silkwood v. Kerr-McGee Corp.,* 769 F.2d 1451, 1460–61 (10th Cir.1985), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 356 (1986).

### IV

■ Defendants argue that the district court should have limited the amount of

punitive damages to the actual damages suffered by Henry. They contend that the court misapplied Oklahoma's punitive damages statute when it found that defendants' conduct satisfied the statutory requirement for lifting the "cap" on punitive damages.

Under Oklahoma law, punitive damages are available when a defendant has been found "guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed." Okla.Stat.Ann. tit. 23, § 9. The amount of punitive damages that may be awarded, however, is limited to an amount not exceeding actual damages awarded unless:

> "at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression fraud or malice, actual or presumed."

*Id.* Defendants argue that the district court's findings related only to the availability of punitive damages and not to whether there was sufficient evidence to justify an award of damages in excess of actual damages.

We reject this argument also. To give a punitive damages instruction not limited to the cap, the court must find clear and convincing evidence of the defendant's "wanton or reckless disregard for the rights of another...." *Id.* The court does not have to find that punitive damages in excess of actual damages should be awarded, but only that the evidence is such that a jury award in excess of the cap can be upheld. It is then for the jury to decide whether to exercise the option of awarding punitive damages in excess of actual damages. *Id.*

In the instant case, the court found that defendants' business strategy and the manner in which it was carried out evinced a wanton and reckless disregard to Henry's rights and that the jury could therefore consider Henry's request for punitive damages in excess of any actual damages awarded. We conclude that these findings satisfy the statutory requirement.

■ Defendants next contend that the court erred in limiting the punitive damages to $2,000,000 on the verdict form, arguing that this improperly suggested to the jury that it should award such an amount if punitive damages were justified. We disagree.

The inclusion of the $2,000,000 limitation on the verdict form did not improperly invade the jury's role of determining damages. The verdict form directed the jury to specify on a blank line the amount of punitive damages, provided that it not "exceed $2 million." I R. tab 218. We see no error or improper suggestion in this form. If any prejudice occurred, it was to Henry because the jury was not permitted to exceed $2,000,000.

## V

■ Finally, defendants argue that the district court erred in giving the jury copies of the instructions the day before their deliberations; they assert that predeliberation access to the instructions was improper because it provided individual jurors with the opportunity to seek other sources and deliberate on the facts independently and outside of the trial setting.

The argument is unpersuasive. It is established that the district court may give the jury copies of the instructions before deliberations begin. *See United States v. Standard Oil Co.,* 316 F.2d 884, 896 (7th Cir.1963) (trial judge has wide discretion to submit written instructions to jury). Defendants did not object at the time of the court's decision, *see* Fed.R.Civ.P. 51, and have not identified any juror misconduct in connection with the district court's order. Under these circumstances, we hold the district court did not err in giving the predeliberation instructions.

AFFIRMED.