980 F.2d 741
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 ALVIN J. WATSON, INC., and Control Power, Inc., Plaintiffs-Appellants,
v.
EMERSON ELECTRIC CO., a Missouri corporation, Defendant-Appellee.
 No. 91-7113.
 United States Court of Appeals, Tenth Circuit.
 Nov. 23, 1992.
 
 Before STEPHEN H. ANDERSON, Circuit Judge, and McWILLIAMS and GIBSON*, Senior Circuit Judges.
 ORDER AND JUDGMENT**
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 Alvin J. Watson, Inc. (Watson, Inc.) and Control Power, Inc. (Control) brought this action against Emerson Electric Company (Emerson) in the United States District Court for the Eastern District of Oklahoma for breach of an oral contract and for tortious interference with another contract. Jurisdiction was based on diversity. 28 U.S.C. § 1332. After discovery, the district court, on motion, granted summary judgment for Emerson on both counts. The plaintiffs appeal the judgment thus entered.
 
 
 2
 Plaintiffs' amended complaint was filed on April 19, 1991. From it we learn that Watson, Inc. and Control are sister corporations organized by Alvin J. Watson (Watson) under the laws of Wyoming and that their principal place of business is now in Ardmore, Oklahoma. Emerson, the defendant, is a corporation organized under the laws of Missouri.
 
 
 3
 Plaintiffs alleged in Count 1 of the amended complaint that Watson provided services in 1984 as a manufacturer's representative for Emerson for sale of designated components and that Emerson breached the agreement and owed Watson in excess of $50,000.[1]
 
 
 4
 Plaintiffs alleged in Count 2 that Control had provided labor, services and material to Emerson under certain written and oral contracts, which Emerson had breached, and, accordingly, that Emerson owed Control in excess of $50,000.
 
 
 5
 Plaintiffs alleged in Count 3 that Emerson tortiously interfered with a contract Control had with TRW Reda, Inc. (Reda) and that, as a result, Control sustained damages in excess of $50,000.
 
 
 6
 Plaintiffs alleged in Count 4 that based on engineering data Emerson furnished them, they purchased AS5100 Accuspede Drives from Emerson, which did not thereafter perform to the standards set forth by Emerson in its engineering data, and that, as a result of this misinformation and reliance thereon, Watson, Inc. and Control sustained damages in excess of $50,000.
 
 
 7
 By answer, Emerson denied liability and asserted a counter-claim against Watson seeking damages in excess of $50,000.
 
 
 8
 Discovery ensued, and Emerson then filed a motion for summary judgment as to Count 1.[2] Emerson also filed a motion for judgment on the pleadings as to Count 3, which motion the district court converted to a motion for summary judgment.[3] After hearing, the district court granted summary judgment for Emerson on Counts 1 and 3. The plaintiffs then dismissed Counts 2 and 4 of their complaint, and Emerson dismissed its counterclaim. Plaintiffs now appeal the final judgments entered on Counts 1 and 3.
 
 
 9
 The essential background facts, as established by the pleadings and developed by discovery, relevant to the grant of summary judgment, are not disputed by plaintiffs. The facts shall be summarized separately as they relate to Counts 1 and 3, inasmuch as these counts are based on separate transactions.
 
 Count 1: The Commission Claim
 
 10
 Watson, Inc. claims that in the late summer or early fall of 1984, Watson entered into an oral agreement with a representative of Emerson whereby he would receive a 10% commission if he was successful in causing Cities Service Company (Cities Service) to specify use of Emerson variable speed drives in bid specifications for an off-shore drilling project Cities Service was constructing in California. The initial contact on this particular matter was a telephone call from Bob Corey, an employee of Emerson's Industrial Controls Division located in Santa Ana, California, to Watson in Cody, Wyoming. In his performance of this oral understanding, Watson apparently first visited Emerson's offices in Oklahoma, then traveled to Bakersfield, California, to meet with Cities Service's employees, thereafter went to San Francisco to meet with Cities Service's consulting engineers, and finally went to San Miguel, the site of the off-shore project.
 
 Count 3: Tortious Interference Claim
 
 11
 In paragraph 8 of the amended complaint, the plaintiffs alleged as follows:
 
 
 12
 Control Power entered into a written agreement in 1986 to manufacture "submersible pump variable speed drives" for TRW Reda, Inc. ("Reda") which resulted in a manufacturing relationship between Control Power, Emerson and Reda wherein Control Power was an "exclusive" manufacturer for Reda for these particular products.
 
 
 13
 The "written agreement" mentioned in paragraph 8 provided that Control would repackage Emerson's variable speed drives exclusively for Reda so that the drives could withstand an outdoor environment. Emerson in turn agreed that it would supply the variable speed drives to Control for repackaging. Control asserts that Emerson also agreed that Control would not be required to pay Emerson for the variable speed drives until Control received payment from Reda.
 
 
 14
 The record discloses that on November 3, 1987, at a meeting held in Control's offices in Cody, Wyoming, Emerson's representative refused to continue to supply variable speed drives for Control to repackage for Reda unless Control either immediately paid its account with Emerson in full or agreed to change the business relationship between the parties so that Emerson would thereafter sell directly to Reda, and Control would do the repackaging for Emerson as its subcontractor. Apparently, Control could not make immediate payment of its account with Control and agreed to change the business relationship of the parties, as Emerson suggested.
 
 
 15
 The district court held that Watson Inc.'s claim for a commission (Count 1) for Watson's efforts persuading Cities Service to require the use of Emerson's speed drives on an off-shore drilling project Cities Service was constructing in California was barred by Oklahoma's three-year statute of limitations and that Wyoming's eight-year statute of limitations did not apply under Oklahoma's "borrowing" statute. As to plaintiffs' claim for tortious interference with Control's contract with Reda (Count 3), the district court held that Emerson was itself a party to the very contract with which it allegedly interfered and that, under Wyoming law, a party to a contract cannot tortiously interfere with his own contract. We shall consider these two matters separately.
 
 Count 1: The Commission Claim
 
 16
 This action was filed in the United States District Court for the Eastern District of Oklahoma on April 4, 1991. The parties apparently agree that Watson's claim for an unpaid commission accrued, at the latest, in early 1985. 12 O.S. § 95 provides that an action upon a contract, express or implied, not in writing, can only be brought within 3 years "after the cause of action shall have accrued." Since the present action was brought some six years after the date when the cause of action accrued, the district court held that Oklahoma's 3-year statute barred Watson's claim for an unpaid commission. Watson, Inc. argues that the district court erred in its interpretation of Oklahoma's borrowing statute and that had the district court properly construed Oklahoma's borrowing statute, Wyoming's 8-year statute of limitations would have applied and its commission claim would not be time barred.
 
 
 17
 Oklahoma's borrowing statute, 12 O.S. § 105, reads as follows:
 
 
 18
 The period of limitation applicable to a claim accruing outside of this state shall be that prescribed either by the law of the place where the claim accrued or by the law of this state, whichever last bars the claim.
 
 
 19
 The district court concluded that Watson's claim for an unpaid commission accrued in California, which had a 2-year statute of limitations for an action of the present type, and did not accrue in Wyoming, which had an 8-year statute. We agree.
 
 
 20
 The general rule is that a claim accrues within the meaning of a borrowing statute in the place where the contract is to be performed. In Guaranty State Bank of Tishomingo v. First National Bank of Ardmore, 260 P. 508, 510 (Okla.1926), the Oklahoma Supreme Court spoke as follows:
 
 
 21
 A cause of action arises, in the nature of things, at the time when and place where the act is done or ommitted which gives the plaintiff the cause of complaint.
 
 
 22
 In the instant case, Watson "performed" his obligation under the alleged oral agreement with Emerson in California. At that point in time, Watson had a "claim" against Emerson. When Emerson did not make payment, this claim became the basis for a cause of action. Had there been payment, apparently it would have come from Emerson's office in Santa Ana, California. Neither party performed the agreement, or any part of it, in Wyoming.[4] The district court did not err in refusing to borrow Wyoming's 8-year statute of limitations. Since California's statute of limitations was only 2 years, the district court correctly held that Watson, Inc.'s claim for an unpaid commission was barred by Oklahoma's 3-year statute of limitations.
 
 
 23
 We are not impressed with Watson, Inc.'s argument that since the oral agreement did not itself designate a place of performance, the law of the place where the contract is made governs with respect to the "nature, validity and interpretation" of the contract, citing Rhody v. State Farm Mutual Ins. Co., 771 F.2d 1416 (10th Cir.1985).[5] We are not here concerned with the "nature, validity and interpretation" of any agreement between Watson and Emerson. Rather, we are concerned with Oklahoma's borrowing statute. When an action is brought in Oklahoma on a claim accruing outside Oklahoma, Oklahoma borrows the statute of limitations of the state where the claim accrued, if it be greater than Oklahoma's 3-year statute. However, if the statute of limitations in the state where the claim accrued is shorter than Oklahoma's, Oklahoma's statute controls. Hence, the district court's use of Oklahoma's 3-year statute was proper.
 
 Count 3: Tortious Interference Claim
 
 24
 As above indicated, the acts which gave rise to the plaintiffs' tortious interference claim occurred in Control's offices in Cody, Wyoming, on November 3, 1987. At that time and place, Emerson's representative demanded that Control immediately pay its account with Emerson in full or agree to a new arrangement whereby Emerson would deal directly with Reda and Control would do the repackaging work for Emerson as Emerson's subcontractor. Control could not, or did not, make immediate payment in full and apparently agreed to the new arrangement between Control, Emerson and Reda.
 
 
 25
 As mentioned, plaintiffs assert that Control's understanding with Emerson was that Control would not have to pay Emerson until Control had received payment from Reda. Apparently, the reason Control could not immediately pay Emerson in full was that Control had not yet received payment from Reda. However, plaintiffs did not sue Emerson for breach of contract. Rather, they claimed that Emerson tortiously interfered with Control's agreement with Reda. In their complaint, the plaintiffs did not identify the precise statutory or common law basis for their claim of tortious interference. However, in this court, counsel indicates that this claim is based on Section 766A of the Restatement (Second) of Torts, "as adopted by this court in Henry & Co., Ltd. v. TG & Y Stores, 941 F.2d 1068 (10th Cir.1991)."[6] Section 766A provides as follows:
 
 
 26
 One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.
 
 
 27
 The general rule is that a claim for tortious interference will not lie where the alleged interferer is a party to the contract with which he allegedly interfered. One's breach of his own contract is not a basis for the tort. To give rise to the tort of intentional interference with a contract, the offending party must be an "outsider," not an "insider," to the contract with which he interfered. In this regard, the Supreme Court of Wyoming, in Board of Trustees v. Holso, 584 P.2d 1009, 1017 (Wyo.1978), stated that the tort of intentional interference with contractual obligations did not apply to actions between parties to an existing contract; "they lie only against outsiders who interfere with the contractual expectancies of others." To like effect, the Wyoming Supreme Court, in Kvenild v. Taylor, 594 P.2d 972, 977 (Wyo.1979), held that under Holso "[the defendant] cannot be held liable for tortious interference with contract because she was a party to the contract she is alleged to have interfered with."[7]
 
 
 28
 In granting Emerson summary judgment, the district court held that, under the Wyoming authorities above cited, the plaintiffs had no claim against Emerson for intentional interference with their contract with Reda since Emerson was itself a party to that contract. We agree. John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co., 941 F.2d 1068 (10th Cir.1991), relied on by the plaintiffs, did not involve the issue here involved, namely, whether a claim for tortious interference with a contract lies where the alleged interferer is a party to the contract with which he allegedly interfered.
 
 
 29
 As set forth above, paragraph 8 of the written agreement between plaintiffs and Reda states that Control's written agreement with Reda "resulted in a manufacturing relationship between Control Power, Emerson and Reda...." Further, paragraph 10 in the amended complaint reads as follows:
 
 
 30
 10. Emerson, although not a [sic] actual party to the written contract between Control Power and Reda, was designated in the contract between Control Power and Reda as a party to the contract, it being understood between Emerson, Control Power and Reda that Emerson would supply the key components, and at all times would be responsible for ensuring that these components were shipped to Control Power so that they could be repackaged by Control Power as the original equipment manufacturer of "submersible pump variable speed drives" in the exclusive agreement with Reda (emphasis added).
 
 
 31
 By the allegations in their complaint, the plaintiffs in effect conceded that Emerson was considered a party to plaintiffs' written agreement with Reda. At least, that is what they alleged. And Watson's testimony upon deposition was in line with those allegations. Such being the case, under Wyoming law, a claim that Emerson tortiously interfered with a contract to which it was deemed a party will not lie.[8]
 
 
 32
 Judgment affirmed.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior Judge, U.S. Court of Appeals, Eighth Circuit, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 As to Count 1, Watson, Inc. is suing as the assignee of Alvin J. Watson
 
 
 [2]
 In the supporting brief for the motion for summary judgment on Count 1, Emerson argued that the plaintiffs' claim for a commission was barred by Oklahoma's 3-year statute of limitations. Emerson argued that Oklahoma's statute of limitations should apply because the applicable statute of limitations in California, where Watson performed his obligations under the alleged oral agreement, was only two years, and Oklahoma's "borrowing statute" required the application of the longer of the two limitations periods. In response, Watson argued that Oklahoma's borrowing statute required the use of Wyoming's 8-year statute of limitations
 
 
 [3]
 In the supporting brief for the motion for judgment on the pleadings, Emerson argued that because the alleged "interference" occurred in Cody, Wyoming, Wyoming law should apply. Conceding that Wyoming had adopted the Restatement (Second) of Torts definition of tortious interference, Emerson went on to assert that the Wyoming Supreme Court had held that such an action does not lie against one who was a party to the contract allegedly interfered with, and further, that a "refusal to deal" is not actionable as tortious interference under Wyoming law
 
 
 [4]
 We reject Watson, Inc.'s suggestion that since Watson expected Emerson to pay his commission at his Cody, Wyoming office, "performance," under the contract, was in Wyoming, making Wyoming's 8-year statute applicable
 
 
 [5]
 The contract forming the basis for Count 1 being oral rather than written, it is not too surprising that the place of performance was not spelled out. The verbal contract was at best "bare bones," and there were other details apparently never discussed. In any event, it would appear that the parties contemplated that the contract would be performed in California, where Cities Service was going to construct an off-shore drilling project, and of course that is where Watson's performance actually did occur
 
 
 [6]
 In John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co., 941 F.2d 1068 (10th Cir.1991), we held that even though no Oklahoma court had adopted § 766A, we were nonetheless satisfied that a claim under § 766A was actionable in Oklahoma
 
 
 [7]
 Both Holso and Kvenild involved claims based on Section 766 of the Restatement (Second) of Torts. That section reads as follows:
 One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.
 
 
 [8]
 As an alternative position, Emerson also argues in this court, though not in the district court, that under Price v. Sorrell, 784 P.2d 614 (Wyo.1989), the Wyoming Supreme Court has rejected Section 766A of the Restatement (Second) of Torts. As indicated, this was not the basis for the district court's grant of summary judgment as to Count 3. In Price, there was no actual breach, failure to perform, or termination of the contract allegedly interfered with, and the Wyoming Supreme Court was primarily concerned with the language in § 766A, "or causing his performance to be more expensive or burdensome." In the instant case, Emerson allegedly interfered with Control's contract with Reda, resulting in an outright termination of the contract. For the purposes of this case, we assume that the Wyoming Supreme Court would adopt that part of § 766A which creates a claim for tortious interference against one (Emerson) who intentionally and improperly interferes with the performance of a contract between another (Control), and a third party (Reda), by preventing the other (Control) from performing the contract. The present case is not one where the contract in question, despite the interference, was nonetheless performed, although such performance was "more expensive or burdensome."