54 F.3d 787
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert I. GREENBERG, Plaintiff-Appellee,
v.
Laurance B. WOLFBERG and Carolyn Wolfberg, Defendants-Appellants.
 No. 92-6023.
 United States Court of Appeals, Tenth Circuit.
 May 11, 1995.
 
 Before TACHA, SETH, and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 The Appellee herein, Robert Greenberg, brought suit under Oklahoma law against the Appellants Laurance B. Wolfberg and Carolyn Wolfberg asserting causes of action for malicious prosecution and abuse of process. The complaint was based on a series of lawsuits brought against Greenberg personally, or against his interests, by the Appellants, the Wolfbergs, beginning on November 3, 1986 and continuing into 1990.
 
 
 2
 The jury returned a general damages verdict against the defendants in the amount of $284,000. The jury heard evidence as to the financial position of both defendants and awarded punitive damages of $1,750,000 against Laurance Wolfberg and $500,000 against Carolyn Wolfberg. The court denied the post-trial motions of defendants. Defendants appealed.
 
 
 3
 This court certified several questions raised in this appeal to the Supreme Court of Oklahoma. The response of that court as to the applicable law of Oklahoma was most helpful.
 
 
 4
 Robert Greenberg and Carolyn Wolfberg are the children of Mal Greenberg and Rose Greenberg. Laurance Wolfberg is married to Carolyn Greenberg Wolfberg. Robert Greenberg and Laurance Wolfberg over several years had jointly held interests in several businesses. Mal Greenberg left a testamentary trust for the benefit of his children and his wife, Rose Greenberg. On the death of Rose the trust estate was to be divided. Robert Greenberg was to receive his portion outright, but Carolyn's share was to remain in trust. Robert Greenberg was named a trustee of the testamentary trust and the continuing trust for Carolyn. Much of the litigation which is here concerned relates to this trust following Mal Greenberg's death.
 
 
 5
 Sometime in 1982 Robert Greenberg and Laurance Wolfberg agreed to separate their joint interests. This included their interests in Service Business Forms. By the division, Wolfberg was to receive all the shares in Service except those shares held by the Mal Greenberg Testamentary Trust. The trust owned shares were then to be sold by the trust to Service. They were so sold and Service executed a note to the trust for the purchase price ($100,000). Wolfberg thus acquired control of all the shares of Service. This note became the subject of some of the continuing litigation.
 
 
 6
 The joint interests in an oil well service company, Griffith Resources, were to be separated. However, Griffith owed a bank loan and the bank had made a demand for payment. Greenberg and Wolfberg agreed to pay a share of this loan ($400,000) by having Green Wolf Oil Company (another jointly owned enterprise) loan the money to Griffith Resources. This was done.
 
 
 7
 The case before us, both the malicious prosecution cause of action and the abuse of process cause, are based on several predicate cases brought against Greenberg, or his interests, by the defendants herein, as mentioned. The several cases are described below. Some detail appears to be necessary to explain the interrelation among the cases.
 
 
 8
 Case No. 1. The first predicate case was filed in the United States District Court for the Western District of Oklahoma on November 3, 1986 (CIV-81-2441-C). It was titled Laurance Wolfberg v. Robert Greenberg. One count asked for an audit of the Green Wolf Partnership accounts which was granted by the court. Wolfberg also asserted that the fee charged by Greenberg to manage the partnership was excessive. A refund of profits was requested. There was also a claim that Greenberg used borrowed money for his own account which belonged to the partnership, but this was abandoned before trial.
 
 
 9
 There was also an attempt in the suit to hold Greenberg responsible for the $400,000 loan to Griffith Enterprises. Punitive damages of one million dollars were sought.
 
 
 10
 The trial court granted the audit, as mentioned, but denied all other claims for breach of duty. As to the Griffith note, the trial court characterized Wolfberg's testimony as incredible and unbelievable and this "tainted his credibility with respect to every other issue."
 
 
 11
 The trial court's decision was appealed by Wolfberg, affirmed May 1989, and rehearing by the court of appeals was denied. Wolfberg sought certiorari from the United States Supreme Court. This was denied November 13, 1989.
 
 
 12
 Case No. 2 was filed November 26, 1986 in the state court, the District Court for Oklahoma County, Oklahoma (No. CJ-86-12606). Plaintiffs were the Wolfbergs and Service Business Forms. Greenberg was a defendant (with others) individually and as trustee. Damages were sought for breach of contract ($300,000), a fraud claim against Greenberg, and punitive damages ($1,000,000). Apparently the plaintiffs sought to force a counterclaim by the trust on the Service note or to have the trust disclaim the right to proceeds of the note. It was asserted that Greenberg had agreed to do so. However, the plaintiffs voluntarily dismissed without prejudice this Suit No. 2 (March 18, 1988). The case had been pending about a year and four months.
 
 
 13
 Case No. 3 was filed December 3, 1986, in the District Court, Oklahoma County, Oklahoma, No. CJ-86-12734, Carolyn Wolfberg v. Robert Greenberg, trustee, and individually. It was also against all other trustees of Greenberg Trust and asked for an accounting, removal of trustees, dissolution of the trust and distribution of property. Damages were sought against Greenberg for breach of fiduciary duty and costs. Punitive damages were claimed in the amount of $10,000,000.
 
 
 14
 The court permitted an audit but no wrongdoing was found by the audit. A hearing was set on the summary judgment motion of the defendants in Case No. 3 for September 18, 1987, but the plaintiffs dismissed without prejudice on the day before the hearing date. The plaintiffs, however, persisted in basically the same claim, and so filed another suit in a Kansas state court (this is Case No. 4).
 
 
 15
 Case No. 4, District Court, Sedgwick County, Kansas, No. 88-C-3346, was filed September 16, 1988, and terminated February 15, 1990. In this Kansas case, which followed the voluntary dismissal of No. 3, Mrs. Wolfberg as the plaintiff sought the removal of trustees for hostility, but no damages were sought. No hostility by the trustees was found, but the court found that what hostility might exist was by Laurance Wolfberg toward his brother-in-law. The Kansas court held for Robert Greenberg, one of the named defendant-trustees.
 
 
 16
 The trial judge in No. 4 stated as to the hostility of Mr. Wolfberg that it "has been precipitated by Mr. Wolfberg's mental illness, and which hostility has been apparently adopted by Mrs. Wolfberg." Appellant's App. at 298.
 
 
 17
 Case No. 5 was filed December 9, 1986 in the United States District Court for the Western District of Oklahoma by Greenberg as a co-trustee of the testamentary trust and by the other trustees to collect from Service Business Forms on the note described above. In this action Service Business Forms (then controlled by Wolfberg) asserted by a counterclaim served March 1987 basically the same cause advanced in Case No. 2. Thus it sought to avoid the note it had signed. The court granted summary judgment March 17, 1988 on the note against Service. An advisory jury found no agreement by Greenberg to file a disclaimer as to the note. Final judgment was entered for plaintiffs on March 14, 1988.
 
 
 18
 In No. 5, an appeal by Service was taken on the summary judgment. The court of appeals affirmed. A Petition for Certiorari was filed in the United States Supreme Court and denied on January 16, 1990.
 
 
 19
 A counterclaim is a "civil proceeding" for the purposes here considered. RESTATEMENT (SECOND) OF TORTS Sec. 674.
 
 Malicious Prosecution
 
 20
 There is nothing unusual about the cause of action for malicious prosecution under Oklahoma law. The Oklahoma Supreme Court in its response to our certification and in Young v. First State Bank, Watonga, 628 P.2d 707 (Okla.), set forth the elements. Thus the plaintiff in the malicious prosecution case must prove that the defendant:
 
 
 21
 1. initiated the proceedings, and each, if several proceedings are asserted as the predicate;
 
 
 22
 2. that the proceedings were motivated by malice, were without probable cause, and damaged plaintiffs;
 
 
 23
 3. that the proceedings (or separate causes within the proceedings) were concluded in plaintiffs' favor.
 
 
 24
 Oklahoma generally cites the RESTATEMENT (SECOND) OF TORTS (1977), and it at Sec. 679 states in part as to malicious prosecution:
 
 
 25
 "One who repeatedly initiates civil proceedings against another for the same cause of action is subject to liability for the harm caused thereby, if
 
 
 26
 "(a) the proceedings are initiated without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim on which the proceedings are based, and
 
 
 27
 "(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."
 
 Use of Multiple Predicate Suits
 
 28
 There is apparently no Oklahoma case law on a malicious prosecution action grounded on repetitive civil proceedings. In our view, the above quoted provisions would apply. To use such a predicate, the same basic cause of action should appear in each earlier component, and the elements stated above should be present in each of the earlier components. Each case must be separately evaluated as a condition to the use of an earlier adversely decided component as an element of proof in a later one.
 
 Abuse of Process
 
 29
 Under Oklahoma law the elements of the tort of "abuse of process" are:
 
 
 30
 1. a misuse of process or misapplying it for a purpose for which it was not "designed" to accomplish;
 
 
 31
 2. use of process primarily for an improper purpose;
 
 
 32
 3. with damage to the plaintiff.
 
 
 33
 See Oklahoma Supreme Court Response, and PROSSER AND KEATON ON THE LAW OF TORTS, Sec. 121, at 897 (5th Ed.).
 
 
 34
 When examining predicate cases it must of course be determined whether the process was wrongfully used. If in earlier proceedings there is proof of facts relevant to the motive in a later action, such facts may be used.
 
 
 35
 To repeat, the Oklahoma Supreme Court in its response to our certified questions, described the abuse of process cause of action's elements in Oklahoma:
 
 
 36
 "The tort's elements are (1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse. Although a plaintiff in a predicate action may have been motivated by bad intention, there is no abuse if the court's process is used legitimately to its authorized conclusion."
 
 
 37
 (Footnotes omitted.) The Oklahoma Supreme Court also stated that the plaintiff in an abuse of process action is not required to prove that:
 
 
 38
 "(1) the underlying action was brought without probable cause or (2) that he/she prevailed in that proceeding. Neither is it necessary that the action, in which the abuse is alleged to have occurred, be concluded."
 
 
 39
 The Oklahoma Supreme Court also points out that the term "process" includes "the entire range of procedures incident to the litigation process," citing Nienstedt v. Wetzel, 651 P.2d 876 (Ariz.).
 
 
 40
 The elements of the tort of abuse of process, the factors, and their interaction are quite different from those in malicious prosecution proceedings. It is apparent that we are concerned only with the misuse of "process," and not with the commencement of actions. Thus the purpose and authorized use of process for its accepted purpose, and to pursue it to a conclusion, although carried out with bad intentions, is not an abuse of process.
 
 
 41
 It is sufficient to refer to the response of the Oklahoma Supreme Court to our certification, and to Meyers v. Ideal Basic Industries, Inc., 940 F.2d 1379 (10th Cir.), and Gore v. Taylor, 792 P.2d 432 (Okla. Ct. App.).
 
 Post-Trial Motions
 
 42
 After a seven-day trial and the jury verdict the defendants moved for a Judgment N.O.V., and also for a new trial (or for a remittitur of damages). The trial judge in his Order which denied the motions necessarily included an examination of the evidence as we must do to see whether the jury could properly have decided as it did. Sandlin v. Texaco, 900 F.2d 1479 (10th Cir.); Brown v. McGraw Edison Co., 736 F.2d 609 (10th Cir.). Also the court considered the challenge as to whether Oklahoma law was followed.
 
 
 43
 The Oklahoma case law as described above is quite clear that a predicate suit must be "terminated" in favor of the malicious prosecution plaintiff before a malicious prosecution case can be based on it in the ordinary situation. The very good reason stated for the requirement is that, as the Oklahoma Supreme Court said in the response to certification, "[t]o hold differently would be to countenance the possibility of countervailing results arising from the same action." But what should be the conclusion if this possibility cannot exist, thus, if the reason for the rule does not exist? In the case before us there exist some very unusual circumstances relating to this point, and these demonstrate that there can be no "countervailing" action.
 
 
 44
 As described, Case No. 2 was an action by Service Business Forms and the Wolfbergs filed November 26, 1986 in the Oklahoma state court as one of the three original cases filed in the first month. It concerned the note of Service given to the trust. This case was pending for about a year and four months and then dismissed without prejudice by Service Business Forms. When the case was so dismissed Service Business Forms' counterclaim had been pending in the United States District Court of Oklahoma in Case No. 5 for about a year. This counterclaim raised the same issues on the note due the trust as were raised in Case No. 2. The counterclaim was filed in No. 5 which was a case filed by the trustees to collect on the note of Service. This issue on the note was decided in favor of the trustees in No. 5. Service Business Forms-Wolfbergs sought certiorari from the United States Supreme Court. This was denied in 1990. This would seem to have precluded a "countervailing" result on the issue in the voluntarily dismissed case. The issue was "concluded" favorably to Greenberg.
 
 
 45
 Considering dismissals we have also Case No. 3, one of the three original cases. It was filed on December 3, 1986 in the Oklahoma County state court by Mrs. Wolfberg against Greenberg and others. It sought removal of the trustees and $10,000,000 in damages. A preliminary audit developed nothing and the case was dismissed without prejudice the day before a hearing was to be held on the Greenbergs' summary judgment motion directed to the trustee removal issue.
 
 
 46
 Further, as to the dismissed Case No. 3, the same cause of action was begun by Mrs. Wolfberg in a Kansas state court. Again, this was for the removal of the trustees. This is Case No. 4 filed in September of 1988. This Kansas case was terminated in Greenberg's and the trustees' favor by a judgment on the removal issue. Thus the basic issue in Case No. 3 was raised by the Wolfbergs and litigated to a conclusion albeit in another court in Case No. 4, a conclusion favorable to Greenberg. As a consequence no "countervailing results" could arise from No. 3. The reason for "the Rule," not to consider dismissed actions, does not exist.
 
 
 47
 It seems reasonable under these very unusual circumstances described above that we must consider both of the cases voluntarily dismissed on the malicious prosecution and the abuse of process issues because there is not prevailing authority not to do so. The blanket exclusion of all cases voluntarily dismissed is not applicable.
 
 
 48
 As to the timing of the five cases, the record shows that in the last month of 1986 there were three cases pending; during most of 1987 there were four cases pending; during 1988 three cases were pending (except from March to September when two were pending); and in 1989 there were three cases which lasted into the first part of 1990.
 
 
 49
 Schedule of Cases
 Case No. 1986 1987 1988 1989 1990
--------------- ---------- ------------ --------- ------ --------
# 1
Filed Nov. 3, U.S.D.C. ======================= Cert.
1986 W.D. Okla. denied Nov. 13,
 1989
# 2
Filed Nov. 26, State Ct. ============ Dismissed
1986 Okla. Cty. March 18, 1988
# 3
Filed Dec. 3, State Ct. Dismissed
1986 Okla. Cty. Sept. 18, 1987
# 4
Filed Sept. 16, State Ct. ====== Judgment
1988 Kansas Feb. 15,
 1988 1990
# 5
Filed Dec. 9, U.S.D.C. Counterclaim =================
 Cert.
1986 W.D. Okla. filed denied
(by the Trust) March 1987 Jan. 16,
 1990
 
 
 50
 Consideration of the "issue relationship" of the several cases in different courts and different states, together with the commencement by the Wolfbergs of three cases at the outset in about a thirty-day period, in a federal court and a state court, must have led the trial court to the conclusions and findings it expressed. These statements by the trial court were included in the trial transcript, but perhaps of more significance are those in its order of denial entered in response to the Motion of Judgment N.O.V. filed by the Wolfbergs which raised the issues which the court related to the evidence as well as to the law.
 
 
 51
 The Motion for Judgment N.O.V. by the Wolfbergs argues that the jury verdict is against the clear weight of the evidence, and that the law applied was contrary to that prevailing in Oklahoma. As mentioned, the trial court denied defendants' motions and also stated some conclusions in its ruling as to all the actions. Thus in part the court found, at page 6:
 
 
 52
 "Defendant, Lawrence B. Wolfberg, brought these lawsuits on with self declaration of unitary action. The lawsuits pursued by defendants were not sought to vindicate rights, but were contrived to succeed by destroying the familial status of plaintiff, and thereby bringing him to his knees."
 
 
 53
 And in the Order the trial court also stated:
 
 
 54
 "Plaintiff alleged and succeeded in proving that defendants' overall strategy was to financially break plaintiff, destroy his perceived position in the family ...."
 
 
 55
 The court's reference to bringing Greenberg "to his knees" is from Plaintiff's Exhibit 44, a letter from Wolfberg to an attorney relative to action against the trust.
 
 
 56
 The court also apparently relied on Plaintiff's Exhibit 60, a letter wherein Wolfberg insisted in August 1989 that certiorari be sought in Case No. 1 by stating "based on business and overall legal strategy, this effort should be made." The attorney had recommended that certiorari not be sought.
 
 
 57
 The trial court commented on the third suit brought by these defendants in its Order at page 6:
 
 
 58
 "The court notes that the management of the third lawsuit in Oklahoma County was particularly reprehensible because defendants were clearly pleading a case without an evidentiary basis. Defendants' tactic was to continually extend and delay the proceeding at the expense of all the parties involved. Once defendants faced a firm Oklahoma County hearing date on the now-plaintiff's motion for summary judgment, defendants chose to dismiss the suit the day before the scheduled meeting. Shortly thereafter, defendants refiled the same action in District Court of Kansas."
 
 The trial court found:
 
 59
 "The Court adds that there was no evidence that the current plaintiff, Robert I. Greenberg, had not been sued in his personal capacity throughout all the subject lawsuits."
 
 
 60
 We agree with this finding since all the suits were directed to him personally and to his position or interests.
 
 Conclusion on Principal Issues
 
 61
 We do not adopt the trial court's position that it was a "unitary action" for all purposes. However, it is apparent that the same purposes, intent, and wilful acts by the defendants herein were applicable and controlled the bringing, timing, and the pursuit of all the predicate suits. The dismissal of suits with the repetition of issues in new filings appears to be an attempt to avoid the traditional abuse of process doctrines, but in our view had the opposite effect, as did the use of different jurisdictions. The process was used for "an ulterior or improper motive" causing damage to this plaintiff in each instance.
 
 
 62
 In this conclusion it is not necessary to again describe the evidence as it has been referred to and quoted above as it relates to both causes of action. This pervaded the series of cases. We have described the "issue relationship" of the several cases, and noted the sequence, the number of cases pending at any one time, and the time span from the end of 1986 to the first part of 1990. Further, we agree with the trial court's determination that the cases were not commenced by defendants nor conducted by them for any proper purpose. As the trial court determined, and we again quote:
 
 
 63
 "Defendant, Lawrence B. Wolfberg, brought these lawsuits on with self declaration of unitary action. The lawsuits pursued by defendants were not sought to vindicate rights, but were contrived to succeed by destroying the familial status of plaintiff, and thereby bringing him to his knees."
 
 
 64
 When the predicate suits are each separately examined as Oklahoma law directs, with the inclusion of the specific and above overall and continuing actions, intent, and purpose of the defendants in each case, the conclusion must be reached that all the elements of both abuse of process and of malicious prosecution as hereinabove described have been established.
 
 Other Issues
 
 65
 Defendants seek a new trial based on an asserted trial error. Mrs. Wolfberg testified at trial that she had not asked her brother (Greenberg), as a trustee of the trust described above, for money from the trust. She was questioned regarding a statement made in a deposition which may have been to the contrary, but she testified that she did not ask her brother.
 
 
 66
 The trial court's ruling in question however came during the testimony of one of Mrs. Wolfberg's attorneys. He was asked about an answer to an interrogatory he had prepared for Mrs. Wolfberg in Case No. 3. and signed by her. This answer stated that she had asked her brother for money from the trust. The contradiction was raised during the questioning of Mrs. Wolfberg's attorneys (as mentioned). The trial judge stopped the testimony of the attorney, pointed out the testimony of Mrs. Wolfberg that she had never asked, and stated that if Mrs. Wolfberg's testimony at the trial in progress was that she had not asked for money then it was a "judicial admission" that is conclusively established. The court admonished the jury:
 
 
 67
 "[A] party litigant may not advance a contention in trial which is inconsistent with her testimony at that trial. The testimony at trial constitutes what's known in law as a judicial admission, by which a party is bound. ... I advise you that Mrs. Wolfberg may not advance any contention in this case to the effect that she ever asked Robert I. Greenberg, as trustee, for the disbursement of any money to her."
 
 
 68
 The judge thus held that the defendants could not advance the "contention" that Mrs. Wolfberg had asked for money. All parties and the trial judge in his order on the post-judgment motions agree that this characterization of the statement of Mrs. Wolfberg was not correct.
 
 
 69
 Further as to the ruling, no evidence was advanced that Mrs. Wolfberg needed an emergency advance from the trust. The evidence showed she had a substantial balance in her bank account ($80,000.00), and was receiving a monthly advance.
 
 
 70
 The ruling, of course, prevented her from taking the position that she had asked for money but the record shows this was not significant. She had acknowledged the facts on which the court ruled, and the consequence of the ruling was not significant under the circumstances. The ruling was directed to the jury as a legal rule or procedural rule and was not presented, as Appellants urge at length, as an opinion as to Mrs. Wolfberg's veracity. We must conclude that the error was harmless. See Kotteakos v. United States, 328 U.S. 750, 776 (error is harmless where it does not have a "substantial and injurious effect" on the outcome).
 
 Limitations
 Malicious Prosecution
 
 71
 The Oklahoma statutes expressly provide that the period of limitation for an "action" for malicious prosecution is a year. 12 O.S. Sec. 95 (1991). This is within one year "after the cause of action shall have accrued." Sec. 95. Rutherford v. Halliburton Co., 572 P.2d 966 (Okla.).
 
 
 72
 A cause of action in Oklahoma accrues when a plaintiff could have first successfully maintained the cause. Each predicate is considered. The period of limitations does not start to run until the predicate case is no longer pending or the time for appeal has expired. Coleman v. Strong, 232 P. 378 (Okla.).
 
 
 73
 This action was filed on August 14, 1990. As shown below, this is within one year of the termination of each predicate action.
 
 Limitations
 Abuse of Process
 
 74
 The Oklahoma statutes make no specific provisions for a period of limitations for abuse of process actions. The Oklahoma Supreme Court in its response to our questions has stated that it must be placed in the two year period of 12 O.S. Sec. 95(3) (1991) for those actions "not enumerated."
 
 
 75
 The cause of action arises-accrues, the court says, "when the process is abused and damages are incurred, regardless of when the action is determined." The court also stated:
 
 
 76
 "The court may find earlier components of the Process [as defined by the certifying court] relevant as proof of an ulterior or improper motive in a subsequent action."
 
 
 77
 The record shows, as hereinabove mentioned, the predicate actions:
 
 
 78
 No. 2-4 - terminated Kansas state court February 15, 1990.
 
 
 79
 No. 1 - certiorari denied November 13, 1989.
 
 
 80
 No. 3-5 (counterclaim), certiorari denied January 16, 1990.
 
 
 81
 We must hold that the action before us was commenced, as to both causes, within the Oklahoma limitations periods.
 
 Other Issues
 
 82
 The Appellants urge that as to the abuse of process issue in this case the evidence did not show "wilful acts," nor did the pleading make such an assertion. In our view, there was adequate evidence of "wilful acts"--acts not authorized by "the process." There was adequate evidence of this element. Meyers v. Ideal Basic Industries, Inc., 940 F.2d 1379 (10th Cir.); Gore v. Taylor, 792 P.2d 432 (Okla. Ct. App.); Neil v. Pennsylvania Life Ins. Co., 474 P.2d 961 (Okla.).
 
 
 83
 We have considered above the trial ruling as to testimony of Mrs. Wolfberg which characterized for the jury some as a "judicial admission." This was incorrect, as the trial court later acknowledged. This error was not significant, did not demean her, and is not ground for reversal.
 
 
 84
 The award of punitive damages is challenged as excessive considering the defendants' net worth. We do not find in the record a basis for this argument of defendants. The Oklahoma statute does not violate due process as the Appellants urge. We have considered the statute or a similar statute in prior cases. See John A. Henry & Co. Ltd. v. T.G. & Y. Stores Co., 941 F.2d 1068 (10th Cir.), and Silkwood v. Kerr-McGee, 769 F.2d 1451 (10th Cir.). The evidence to support the general damages verdict was sufficient considering the time, litigation involved, and the evidence that plaintiff was unable to properly take care of his business and had emotional problems resulting from the ongoing litigation.
 
 
 85
 The judgment of the United States District Court for the Western District of Oklahoma herein appealed from is AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470