Louise E. BREEDEN, Appellant,

v.

LEAGUE SERVICES CORPORATION, and Credit Service, Inc., Appellees.

No. 49922.

Supreme Court of Oklahoma.

March 7, 1978.

Rex D. Brooks, Oklahoma City, for appellant.

L. David Pomeroy, Fuller, Tubb & Pomeroy, Oklahoma City, for appellee—League Services Corp.

Freeman & Freeman, Oklahoma City, for appellee—Credit Service, Inc.

DAVISON, Justice.

We are asked in this case to review a trial court's granting of summary judgment in favor of defendant collection companies in a suit brought by debtor, Louise E. Breeden, appellant, seeking to recover damages for fear, worry, humiliation, mental anguish, loss of sleep, damages for the resulting loss of her employment, and punitive damages, allegedly resulting from the harassing and threatening collecting tactics of the defendant collection companies.

After pre-trial conference, the defendant collection companies moved for summary judgment based upon the depositions, answers to interrogatories and exhibits before the trial court. Appellant Breeden appeals from the trial court's sustaining of the summary judgment.

Ms. Breeden's complaints as to harassment stem from a series of telephone calls made to and letters mailed *to her while at home and at work.* In her deposition, she testified that the damages she suffered arose from the calls and letters *to her at work.* We first note that the record is totally absent of any evidence that any calls were made or letters sent directly to Ms. Breeden's employer; rather, the only evidence presented demonstrates that she received three letters addressed *to her,* care of her employer, and that the appellee collection companies may have attempted to call her at work as many as fourteen times—no evidence was presented to even suggest that any of the phone calls made were to other than Ms. Breeden personally. Secondly, we note that Ms. Breeden actually *received* only *one* of the calls. Her estimate as to the number of other calls comes from, in a few instances, her being informed by her supervisor that she had received a call, and in the majority of instances was based upon her intuition—Ms. Breeden feeling that certain behavior of her supervisor was an indication she had received another call. None of the letters sent to Ms. Breeden were introduced into evidence by either party—only the envelopes in which they arrived were introduced. The only information as to the sole

phone call Ms. Breeden actually received was Ms. Breeden's testimony that the gentleman who called stated:

"You damned deadbeat. You God damned liar. And you are a deadbeat."

Ms. Breeden testified that these letters and phone calls to her at work caused her employer to threaten dismissal, unless she paid her bills, though her supervisor denies this, and testified that Ms. Breeden was fired because of her work. Although the record reveals several fact questions as to the behavior of Ms. Breeden's employer, there were no fact questions as to the nature of the appellant collection companies' behavior. The fact questions regarding Ms. Breeden's employer are immaterial to the issues involving appellees' conduct, and, therefore do not bar summary judgment.[1]

The question presented is whether the conduct of the collection companies, as shown by the evidence, could give rise to an action in tort? We hold, as the trial court did, that it could not.

Because of the fear of fictitious and or trivial claims and the difficulty of setting up satisfactory boundaries to liability, the law has been slow to afford *independent protection* to the interest of freedom from emotional distress standing alone. It is only recently that the law has fully recognized extreme or outrageous conduct, which intentionally or recklessly causes severe emotional distress, as a separate and distinct basis for tort liability without the presence of elements necessary to other torts, such as assault, false imprisonment, trespass to land or the like.[2]

The general state of the law is succinctly summarized at Section 46, Restatement of Torts (Second), 1965, which provides in part:

§ 46. Outrageous Conduct Causing Emotional Distress

"(1) One who by *extreme and outrageous conduct intentionally* or *recklessly* causes *severe emotional distress* to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

[Emphasis added]

Comment d to that Section provides in part:

"* * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, 47 Harvard Law Review 1033, 1053 (1936). * * * "

If the law allowed liability based upon mere insults or indignities, there would be great danger of frivolous claims. In discussing the danger of frivolous suits, in cases where only insults or profanities are involved, Professor William Prosser, in Law of Torts, West Publishing Company (1971), states:

---

1. *Kiess v. Eason,* 442 F.2d 712 (7th Cir. 1971); and *Robbins v. Gould,* 278 F.2d 116 (5th Cir. 1960).

2. See Restatement of Torts (Second), 1965, Section 46, Comment b.

"There is the further and still more significant, evident and serious danger of fictitious claims and vexatious suits in such cases. Petty insult or indignity lacks, from its very nature, any convincing assurance that the asserted mental distress is genuine, or that it is serious, and unreasonable. When a citizen who has been called a son of a bitch testifies that the epithet has destroyed his slumber, ruined his digestion, wrecked his nervous system, and permanently impaired his health, other citizens who on occasion have been called the same thing without catastrophic harm may have legitimate doubts that he was really so upset, or that if he were his sufferings could possibly be so reasonable and justified under the circumstances as to be entitled to compensation.

Accordingly, it is generally held that there can be no recovery for mere profanity, obscenity, or abuse, without circumstances of aggravation, or for insults, indignities or threats which are considered to amount to nothing more than mere annoyances." [Prosser Law of Torts at 54] [Footnotes omitted]

Thus, in *Brooker v. Silverthorne,* 111 S.C. 553, 99 S.E. 350 (1919), the defendant, who in a telephone altercation with a night exchange operator, called her "A God damned woman" and a "God damned liar," saying that, "If I were there, I would break your God damned neck.", was not held liable, regardless of the fact that the operator allegedly suffered severe emotional distress, brooded over the incident, was unable to sleep and became ill. Although the defendant's conduct was insulting and inconsiderate, it was not so outrageous or extreme as to make him liable to the operator.[3]

The outrageous or extreme character of conduct required may arise from an abuse of a position or a relationship which gives the actor actual or apparent authority over another or the power to affect another's interest. Accordingly, in specific cases, bill collectors or collecting creditors have become liable for extreme abuse of their position. However, even in such cases, the bill collectors or creditors have not been held liable for mere insults, indignities, or annoyances that were extreme or outrageous.[4]

We are faced for the first time with a situation in which a trial court has sustained a summary judgment in a tort action involving the plaintiff's right to be free from emotional distress. We are thus afforded for the first time with an opportunity to discuss the role of court and jury in such cases. In establishing such roles, we adopt the approach outlined in the Restatement of Torts (Second), at Section 46 h and j.[5] The court, in the first instance, must determine whether the defendant's conduct *may* reasonably be regarded *so extreme and outrageous* as to permit recovery, or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, *severe emotional distress* [6] can be found. It is for

---

3. Also see Restatement of Torts (Second) 1965, Section 46, Illustration 4; and *Slocum v. Food Fair Stores of Florida,* 100 So.2d 396 (Fla.1958).

4. See *Peoples Finance and Thrift Co. v. Harwell,* 183 Okl. 413, 82 P.2d 994 (1938); and Restatement of Torts (Second) 1965, Section 46, Comment e.

5. Restatement of Torts (Second), Section 46 h provides:
"It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is

necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement of Torts (Second), Section 46 j provides in part:
"It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed."

6. Restatement of Torts (Second), Section 46 j provides in part:

the jury to determine whether, on the evidence, severe emotional distress in fact existed.

■ The trial court, in the case before us, in sustaining the summary judgment, was required to determine whether outrageous or extreme conduct could be found to exist. As the trial court sustained the summary judgment, we assume that the court determined that outrageous or extreme conduct could not be found, and that reasonable men could not differ as to that conclusion. We agree with the trial court.

The record, though somewhat confusing, and at times seeming to be contradictory, demonstrates that the defendant collection companies committed the following acts during a sixty day period:

1. Mailed three letters to the plaintiff at her home address.

2. Mailed three letters *to the plaintiff* at her place of employment.

3. Made several attempts to contact plaintiff by telephone, both at home and at her place of employment. Plaintiff's own estimate of the number of attempts made at her place of employment was about sixteen.

4. Defendant had only one telephone conversation with the plaintiff. In that call, the plaintiff was called a God damned liar and deadbeat. We note here that all calls were made during reasonable hours.

■ We think it clear that appellees' conduct was not so outrageous as to make them liable for any mental anguish suffered by Ms. Breeden. The number of calls and letters were not excessive, nor were the calls made at unreasonable times, nor was the inconsiderate language so outrageous or extreme as to give rise to liability. In so holding, we note that there is no question that reasonable persons would not differ in concluding that appellees' conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.", which we hold to be the standard against which a defendant's conduct must be measured in cases of the type before us. As the defendant's conduct, in the case before us, was not of such an outrageous or extreme character, we hold that the trial court was correct in granting summary judgment in favor of the appellees.

In granting the summary judgment, the trial court made no finding as to Ms. Breeden's liability under the note involved in the litigation. In bringing her suit, Ms. Breeden raised several defenses as to her liability under the note. It was not necessary for the trial court to rule upon those defenses in determining the issues before it, and the trial court's ruling should not be read as a determination of Ms. Breeden's liability on the note.

For the above stated reasons, we affirm the granting of summary judgment by the trial court.

AFFIRMED.

"The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. For example, the mere recital of the facts in Illustration 1 above goes far to prove that the claim is not fictitious.

The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. * * *"

HODGES, C. J., LAVENDER, V. C. J., and IRWIN, BERRY, BARNES and DOOLIN, JJ., concur.

WILLIAMS and SIMMS, JJ., dissent.