Lori ANDERSON, Appellant,

v.

**OKLAHOMA TEMPORARY SERVICES, INC., d/b/a Express Personnel Services, Appellee.**

No. 87098.

Court of Appeals of Oklahoma, Division No. 1.

July 16, 1996.

Rehearing Denied Aug. 20, 1996.

Guy Clark, Stuart L. Tate, Northcutt, Clark, Gardner, Hron & Powell, Ponca City, for Appellant.

Jim T. Priest, Debra B. Cannon, McKinney, Stringer & Webster, P.C., Oklahoma City, for Appellee.

*OPINION*

BUETTNER, Judge:

Appellant Lori Anderson (Anderson) sued her former employer, Appellee Oklahoma Temporary Services, Inc., doing business as Express Personnel Services (Express), for damages claiming intentional infliction of emotional distress and constructive discharge.[1] Anderson initially worked as a temporary, then as a full-time employee of Express in its Ponca City, Oklahoma office. Anderson quit her job after almost two years of employment with Express. The major component of Anderson's unhappiness was the allegedly vulgar, insensitive and annoying conduct of one of her female supervisors.

■ Express moved for summary judgment on the grounds that the facts alleged did not rise to the "extreme and outrageous" standard required for the tort of intentional infliction of emotional distress and that her distress was not severe. A plaintiff is required to show, in order to establish a prima facie case of intentional infliction of emotional distress: (1) the tortfeasor acted intentionally or recklessly; (2) the tortfeasor's conduct was extreme and outrageous; (3) plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir.1991) (applying Oklahoma law). Express also asserted that there was no showing that it was liable because there was no proof offered that it, rather than the supervisor, had any intent to inflict emotional distress on Anderson.

Express argued that the proof adduced failed to support a constructive discharge theory in that the conditions were not made, or allowed to be, intolerable and that there was no showing of aggravating factors. *Wilson v. Hess–Sweitzer & Brant, Inc.,* 864 P.2d 1279, 1283 (Okla.1993). Express also denied that constructive discharge, in violation of public policy, existed in this case as a matter of law. *Pearson v. Hope Lumber & Supply Co.,* 820 P.2d 443, 444 (Okla.1991).

The trial court granted judgment in favor of Express finding:

personal intimidation such as trying to embarrass or shock another or chastise them

---

1. Anderson pleaded causes of action for both intentional infliction of emotional distress and for outrage. These are but two titles for the same tort. *Eddy v. Brown,* 715 P.2d 74, 76 (Okla.1986).

for their work appearance or doing things to annoy them such as smoking around them and sexual innuendo can be gross and distasteful but, in and of itself, even if repetitive, is not beyond all possible bounds of decency or utterly intolerable in a civilized community. Continual intimidation that one must engage in sexual activity to do one's job and racial slurring may be; however, in the context of this case, Defendant's conduct, taken in the light most favorable to the Plaintiff, is not such that no reasonable person could be expected to endure it.

The court then found that its granting of summary judgment in favor of Express on the intentional infliction of emotional distress cause was fatal to the constructive discharge action and entered summary judgment in favor of Express on that cause also.

▆▆▆ In summary judgment cases, where the evidence is presented to the trial court in documentary form only, this court sits as a court of first instance.[2] Because there is "nothing to weigh as to the credibility of the witnesses, as a court of first instance, we shall accordingly render such judgment as the trial court should have rendered." *Loffland Brothers Co. v. Overstreet,* 758 P.2d 813, 817 (Okla.1988). Especially in matters triable to a jury, such as a tort, "summary judgment must not be allowed to deprive a litigant of a jury trial of disputed issues of fact." *Flanders v. Crane Co.,* 693 P.2d 602, 605 (Okla.1984). The evidence must support the movant's position that there is no substantial controversy as to any material fact and that "all inferences and conclusions to be drawn from the undisputed facts must be viewed in the light most favorable to the party opposing the motion." *Id.* at 605.

### EMOTIONAL DISTRESS

The seminal case in Oklahoma which addresses the issue of the trial court's grant of summary judgment in a tort involving emotion distress is *Breeden v. League Services Corp.,* 575 P.2d 1374 (Okla.1978). The *Breeden* court adopted the two-tiered adjudicato-

ry process described in comments (h) and (i) to § 46, Restatement of Torts (Second):

The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery or whether it is necessarily so. Where, under the facts before the court, reasonable persons could differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based on the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

575 P.2d at 1377–78.

▆▆▆ The standard against which the defendant's conduct is to be measured is whether the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Breeden,* 575 P.2d at 1378, quoting Restatement of Torts (Second) § 46 comment (d). Section 46, Restatement of Torts (Second), provides:

One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

▆▆▆ Liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Breeden,* 575 P.2d at 1376 (citing Restatement § 46).

▆▆▆ Comment (e) to § 46 states that the "extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." The office setting is a factor

---

**2.** Appellee filed a motion to strike portions of the record. We follow 12 O.S.Supp.1993, Ch. 15, App. 2, Rule 1.203(A)(3) and have limited our review to the documents and evidence properly before the trial court on the motion for summary judgment, response and reply.

for the court to consider because the "outrageous and extreme nature of the conduct to be examined should not be considered in a sterile milieu in which it took place. The salon of Madame Pompadour is not to be likened to the rough-and-tumble atmosphere of the American oil refinery." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla.1986).

■ In her answers to interrogatories, Anderson describes six events or types of events to support her claim of outrageous conduct over a two year period:

(1) At a meeting, a female supervisor (Supervisor) described how sexual favors could be used to obtain business.

(2) Anderson went to lunch with Supervisor and another female employee. Anderson felt embarrassed and angry over a discussion of her faults.

(3) Supervisor smoked around Anderson after being asked to stop.

(4) Supervisor used a profanity within the hearing of customers; made lewd remarks about Anderson; told Anderson she would have to comply with dress code.

(5) Supervisor left the door open to the restroom, came out with skirt up to waist; opened her blouse to show a bra to co-workers on two occasions.

(6) Supervisor commented on her sex life (with her husband) within the hearing of employees; made sexual comments.

As the Supreme Court stated in *Eddy*,

"Not every abusive outburst or offensive verbal encounter may be converted into a tort; on the contrary, it would be indeed unfortunate if the law were to close all the safety values through which irascible tempers might legally blow off steam.... Hurt feelings do not make a cause of action under the tort-of-outrage rubric."

715 P.2d at 77.

In *Eddy*, the Supreme Court reinstated summary judgment in favor of the defendant in a case where the allegations of work-place harassment are arguably worse than those described above. Here, some of the complaints deal with vulgarity or crude conduct in general, and not specifically directed at Anderson. Nor did Anderson complain to persons higher in the chain of command. In addition, Anderson admitted that she, at times, also used "cuss words." While this case does not involve either the rough and tumble atmosphere of the oil patch nor the pretentious civility of Madame Pompadour's salon, it is reasonable for the trial court to consider the overall atmosphere of the workplace setting as well as the plaintiff's own conduct in making its initial assessment of a defendant's conduct.

Having reviewed the evidence and arguments submitted to the trial court, we find that the trial court did not err in determining the threshold question, namely, that Express' conduct was not so extreme and outrageous so as to permit recovery of damages in tort.

Express also argues that because the commission of intentional torts is not within any of its employee's job descriptions, if such were committed, the employee would be acting outside the scope of his employment, so that Express would not be liable. *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1245 (Okla.1993) (general rule is that it is not within the scope of an employee's employment to assault a third person); *Holman v. Wheeler*, 677 P.2d 645, 647 (Okla. 1983) (principal's unnecessary and excessive force in student discipline placed him outside the scope of his employment so that he lost the protection of the Governmental Tort Claim exemption from liability). Having found that Anderson failed to convince the trial court and appellate court that the complained of conduct could constitute the tort of outrage we need not discuss whether Express was a proper party defendant for that cause of action.

### WRONGFUL DISCHARGE

■ Anderson, an admittedly at-will employee, claimed that she was constructively discharged from her employment with Express because (1) of Express' indecent, lewd, unlawful and outrageous intentional acts; (2) the discharge was violative of her contract as contained in the policies and procedures of employment; and (3) the discharge violated public policy which dictates a "reasonable, lawful and safe" work place environment. The theories of wrongful discharge were pled

conjunctively and alternatively. The trial court ruled that "[a]s Plaintiff's third cause of action is based on outrageous conduct being against public policy or a violation of implied contract, the Court's threshold finding is fatal to it as well." To the extent Anderson relies on (1) above, the trial court was correct. With respect to theory (2), Anderson presented no evidence that her resignation, for whatever reasons, was the result of a breach of her employment contract which could be transformed into a tort.[3] With respect to Anderson's public policy wrongful discharge argument, she has cited no constitutional or statutory public policy as support for her position. She admits that Express could terminate her at-will, but argues that an employer may not create "an intolerable, offensive and degrading work environment" that would force an employee to quit. We recognize the longstanding Oklahoma basic principle of at-will employment. *Burk v. K-Mart Corp.*, 770 P.2d 24, 26 (Okla.1989). The Supreme Court has indicated that the "public policy exception must be tightly circumscribed" and suggests that courts proceed cautiously if called upon to declare public policy absent some prior legislative or judicial pronouncement. *Id.* at 29.

Based upon this record, we cannot say that conduct by an employer, which does not rise to the level of outrageous conduct, and is not otherwise unlawful, can be the basis of a public policy wrongful discharge action.[4]

## CONCLUSION

The trial court properly determined that the alleged conduct of Anderson's supervisor did not cross the threshold of outrageous conduct and that summary judgment was proper on Anderson's claims of intentional

infliction of emotional distress and wrongful discharge.

AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

**3.** Anderson did sign an employment agreement which could be terminated by either party upon 10 days notice. Anderson gave two week's notice in her letter of resignation.

**4.** We specifically do not address the questions whether outrageous conduct will support a public policy wrongful discharge action, or whether constructive discharge is recognized as triggering such a cause of action. See *Large v. Acme Engineering, Inc.*, 790 P.2d 1086 (Okla.1990)

(court refused to adopt theory of constructive discharge). Also see *Wilson v. Hess-Sweitzer & Brant, Inc.*, 864 P.2d 1279 (Okla.1993) (Supreme Court did not have to decide whether constructive discharge was sufficient for wrongful termination in violation of 85 O.S.1981 § 5 because to state a claim it found that the employment was terminated, the question for the jury was whether the employer or the employees initiated the termination).