1999 OK 63

Rowena FRANK, Special Administrator of the Estate of Harold E. Frank, Deceased, Plaintiff/Appellee,

v.

Gary MAYBERRY and Linda Mayberry, Defendants/Appellants.

No. 88,014.

Supreme Court of Oklahoma.

June 30, 1999.

Harvey L. Chaffin, Chaffin, Culver & Chapman–Plumb, P.C., Talequah, Oklahoma, For Plaintiff/Appellee.

D.D. Hays, Jeff Bonds, Bonds, Matthews, Bonds & Hayes, Muskogee, Oklahoma, For Defendants/Appellants.

SIMMS, J:

¶ 1 This case involves a dispute over the Defendants' (Appellants), Gary and Linda Mayberrys', use of a road which runs through Plaintiff (Appellee), Harold Frank's, property.

## I. Facts

¶ 2 In 1992 Defendants, Gary and Linda Mayberry, purchased approximately 500 acres of land in Cherokee County, with the intent to use the land for logging. Shortly after buying the property, Defendants discovered that a roadway which they believed to be public was instead a private road. Defendants made some attempts to negotiate access to this private road, but these negotiations ended without securing use of the road.

¶ 3 After efforts to use the private road ended, Defendants then began exploring the use of the undesignated section line road which ran through the Frank property. Plaintiffs, Harold and Rowena Frank, owned approximately 80 acres of land in close proximity to the Mayberrys' logging interest. The undesignated section line road offered the logging access which Defendants sought.

¶ 4 The Franks constructed gates over the road in two places, preventing public use of the road. Defendants, wanting the section line open for public use, sought an order from the Cherokee County Board of County Commissioners. In July 1992, after notice and a hearing on the Mayberrys' request, the county commissioners denied the request to designate the road as an open section line.

¶ 5 Harold Frank was in poor health, which included respiratory problems. The Franks were concerned that opening the section line would be detrimental to Mr. Frank's health due to increased traffic and dust, a concern the Franks stressed to the county commissioners.

¶ 6 After the hearing, one of the county commissioners met privately with the Mayberrys and told them they did not need an order from the county commissioners to use the section line. Linda Mayberry remembers being told by the commissioner that "no one could keep us from the section line, from going up that section line."

¶ 7 On August 3, 1992, only days after the county commissioners' refusal to open the section line, the county clerk gave Defendants a letter which stated:

"To Whom It May Concern:

According to the records of the Cherokee County Clerk's Office there is no document closing a road [along the section line at issue]."

Three days later, Defendants took a logging crew, consisting of three vehicles and a half-dozen people, to the undesignated section line, cut through the chain on the Frank's gate, cut down a tree limb which interfered with the passage of a truck and began to fill in part of a ditch to provide truck access.

¶ 8 Rowena Frank went to the gate and was provided a copy of the county clerk's letter. Although Rowena Frank recalls Gary Mayberry telling her, "this is supposed to be an open section line and we are coming through"; Gary Mayberry asserts he said nothing to Mrs. Frank. After meeting the Mayberry crew at the gate, Rowena Frank then went inside and spoke with her husband.

¶ 9 The Franks phoned the sheriff, who came to the scene. The sheriff told the Mayberrys to leave, which they did. Mrs. Frank testified she believed the Mayberrys remained on the property for approximately thirty minutes and at no time during the encounter did Mr. Frank speak to the Mayberrys or a member of their crew. The Mayberrys did not return again after the sheriff asked them to leave. That evening, Harold Frank was taken to the emergency room and treated for anxiety related heart and respiratory problems. He was released after about one hour.

¶ 10 The next day, Harold Frank filed suit against the Mayberrys alleging trespass and the tort of outrage, seeking actual and punitive damages. Frank's petition said he suffered severe emotional and mental distress which resulted in physical harm, requiring medical attention. The Mayberrys filed an answer and counterclaim in which they claimed a right to use the section line, seeking an injunction to prevent the Franks from obstructing the section line.

¶ 11 Harold Frank was 74 years old when the Mayberrys came to his property, he was in poor health and passed away approximately two years later in 1994, at which time Rowena Frank was substituted as Plaintiff and special administrator of the estate of Harold E. Frank.

¶ 12 In April 1996, the trial court entered a minute order setting the case for pretrial conference. Approximately a month later, the trial court indicated by a minute that it would direct a verdict for trespass in favor of Plaintiff–Frank and submit the tort of outrage to the jury for a determination of actual and punitive damages.

¶ 13 The case was tried to a jury in June 1996. Prior to the beginning of the trial, the judge stated that he would instruct on punitive damages and lift the punitive damages cap. See 23 O.S.1991 § 9. The jury returned a verdict in favor of Plaintiff–Frank for the torts of trespass and outrage, awarded $300.00 in actual damages for the trespass, a $50,000.00 award for outrage and a $200,-000.00 punitive damages award.

¶ 14 From this verdict Defendants appealed. The Court of Civil Appeals affirmed the jury verdict. For the reasons herein stated, we vacate the opinion of the Court of Civil Appeals, affirm the award for trespass, reverse that portion of the verdict awarding Plaintiff $50,000.00 for the tort of outrage, affirm the lifting of the punitive damages cap and remit all but $50,000 of the punitive damages award for trespass.

## II. Directed Verdict for Plaintiff's Trespass Claim

¶ 15 Defendants first allegation of error takes issue with the trial court's directed verdict on the Frank's trespass claim. The Mayberrys assert their interpretation of the law with regard to section lines is correct and they had a right to use the section line because it was not properly reserved for private use. See Paschall Properties, Inc. v. Board of County Comm'rs, 1987 OK 6, 733 P.2d 878, 879.

¶ 16 Defendants' argument loses sight of the significance of the hearing at which the Cherokee County Board of County Commissioners voted against the Mayberrys' request to open the section line for public use. The Board of County Commissioners has authority to determine the designation of county roads and the Mayberrys were not at liberty to follow their own interpretation of the law after the board's decision.

The boards of county commissioners of the various counties *shall have exclusive jurisdiction over the designation,* construction

and maintenance and repair of all of the county highways and bridges therein.

69 O.S.1991 § 601(A) (emphasis added).

█ ¶ 17 Defendants' argued, citing *Paschall*, that a roadway easement was created along the section line. While we agree with *Paschall* and the contention that an easement was created, the mere existence of a section line easement conferred no right upon Defendants to enter Plaintiff's land. *Paschall*, 733 P.2d 878.

█ ¶ 18 Defendants stipulated they cut the chain on Plaintiff's gate, which blocked access to the section line road, and then entered Plaintiff's property after doing so. Given the stipulation, the trial court did not err in directing a verdict for Plaintiff on the trespass claim.

¶ 19 Defendants' acts constituted the actual physical invasion of the property of another. *Fairlawn Cemetery Ass'n v. First Presbyterian Church U.S.A. of Oklahoma City*, 1972 OK 66, 496 P.2d 1185. Having stipulated a breaking of the "close," Defendants conceded the trespass and summary judgment was appropriate.

## III. Tort of Outrage

¶ 20 Defendants demurred to the evidence and moved for directed verdict on the outrage claim. The trial court overruled the demurrer and motion, instructing the jury that it could consider whether the Mayberrys' conduct in gaining access to the section line rose to a level sufficient to constitute the tort of outrage. Defendants assert it was error to allow this question to reach the jury.

¶ 21 This Court has quoted with approval the Restatement (Second) of Torts § 46 (1985):

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to .another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*See e.g. Breeden v. League Services Corp.*, 1978 OK 27, ¶ 7, 575 P.2d 1374, 1376; *Munley v. ISC Financial House, Inc.*, 1978 OK

123, 584 P.2d 1336, 1338; *Eddy v. Brown*, 1986 OK 3, ¶ 8, 715 P.2d 74.

¶ 22 Comment d of § 46 further illustrates the level of conduct which must exist to be considered extreme and outrageous:

Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Id.* at ¶ 8, 575 P.2d at 1376.

[3] ¶ 23 The Mayberrys' conduct consisted of cutting a chain on the Frank's gate only days after being told by the board of county commissioners that the road would not be an open section line; having a verbal encounter with Mrs. Frank, telling her the crew was going to use the section line (there was no contact, verbal or otherwise, with named Plaintiff, Harold Frank); driving trucks onto the Frank property; cutting a tree limb; filling in part of a ditch to allow their truck access; and leaving when instructed to do so by the sheriff. The Mayberrys' conduct is not so outrageous and extreme as "to be regarded as atrocious, and utterly intolerable in a civilized community[,]" nor does it "go beyond all possible bounds of decency[.]" *See* Restatement (Second) of Torts § 46 (1985). The trial court erred in its initial determination that Defendants' conduct could be reasonably regarded as so extreme and outrageous as to permit recovery; the outrage claim should not have been submitted to the jury. As a result, the verdict for Plaintiff on the outrage claim and the corresponding $50,000.00 damages award is reversed.

¶ 24 Having reversed the verdict for the tort of outrage, we need not separately address Defendants' claim that the damages award for outrage was not supported by the evidence.

## IV. Lifting the Punitive Damages Cap

¶ 25 The issue of whether the record contains enough evidence to justify a punitive damages award is a question of law. *Marshall v. El Paso Natural Gas* Co., 874 F.2d 1373 (10th Cir.1989); *Jackson v. Pool Mortgage Co.*, 868 F.2d 1178 (10th Cir.1989). This Court's standard when reviewing the validity of a trial court's lifting of the punitive damages cap, under 23 O.S.1991 § 9, is "whether there was clear and convincing evidence to support the trial judge's special finding." *Wilson v. Hess–Sweitzer & Brant, Inc.*, 1993 OK 156, ¶ 11, 864 P.2d 1279, 1282. When determining whether to send a punitive damages instruction to the jury, the trial court must evaluate the evidence in two phases. First, the trial court must determine if there is competent evidence that defendant's conduct showed "wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed." 23 O.S.1991 § 9(A)[1]; *John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co.*, 941 F.2d 1068, 1073 (10th Cir.1991).

¶ 26 In the second phase, to award punitive damages in excess of actual damages or "lift the cap", the trial court must determine if there is *clear and convincing evidence* of defendant's oppression, fraud or malice. 23 O.S.1991 § 9(A); *Wilson v. Hess–Sweitzer & Brant, Inc.*, 1993 OK 156, 864 P.2d 1279.

> The terms 'oppression, gross negligence, malice, or reckless and wanton disregard of the plaintiff rights' means such willful acts or conduct that would cause harm or injury to another, committed either intentionally or by indifference to, or conscious disregard of, the rights of others.

*Capstick v. Allstate Ins. Co.*, 998 F.2d 810, 817 n. 11 (10th Cir.1993).

¶ 27 Defendants' use of "self-help" to open the section line, while having actual knowledge of the Board of County Commissioners refusal to open the line, then further tampering with the property, is clear and convincing evidence of Defendants' conscious disregard for Plaintiff's rights. The cutting of the chain and entering upon the land can be described only as a wanton, reckless and malicious act.

¶ 28 Therefore, we hold the trial court did not err in lifting the punitive damages cap.

¶ 29 However, having reversed the verdict and $50,000.00 award for the tort of outrage and recognizing the small actual damages award of $300.00, we remit all but $50,000.00 of the punitive damages award. Should Plaintiff reject the remittitur, Defendants shall be granted a new trial.

¶ 30 "[T]he disparity between the harm ... suffered by [Plaintiff] and his punitive damages award" is one guidepost used to determine if the punitive damages award is in keeping with "[e]lementary notions of fairness ... in our constitutional jurisprudence[.]" This fairness requires Defendants not only receive notice their behavior is subject to punishment, but also the severity of the penalty which may be imposed. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809 (1996). The need to lessen the disparity between actual harm and the punitive award in the instant case requires remittitur.

---

1. The Court notes this cause was filed in 1992, before 23 O.S.1991 § 9(A) & (B) was repealed. The statute was repealed in 1995 and replaced with 23 O.S. Supp.1995 § 9.1(A)—(G). We will apply the amendments to this statute prospectively. *Majors v. Good*, 1992 OK 76, 832 P.2d 420, 422. Title 23 O.S.1991 §§ 9(A) & (B) read as follows:

     A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply.

     B. The provisions of this section shall be strictly construed.

## V. Appellee's Request for Appeal Related Attorneys' Fees

¶ 31 Appellee's request for appeal related attorneys' fees is denied.

## VI. CONCLUSION

¶ 32 For the forgoing reasons, we affirm the trial court's directed verdict on the trespass claim and the jury's corresponding award, reverse the verdict for the tort of outrage, affirm the lifting of the punitive damages cap and remit all but $50,000.00 of the punitive damages award, with interest on the judgment to be calculated in a manner consistent with the journal entry of judgment, filed August 14, 1996.

¶ 33 CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGEMENT OF THE TRIAL COURT AFFIRMED IN PART AND REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

HODGES, SIMMS, ALMA WILSON, KAUGER, & WATT, JJ., concur.

SUMMERS, C.J., concurs in part, dissents in part: I would not allow lifting of the cap on punitive damages here otherwise I concur.

HARGRAVE, V.C.J., dissents.

LAVENDER, J.: I dissent, I agree with the opinion of the Court of Civil Appeals.

OPALA, J., dissents and joins LAVENDER, J.