2009 OK CIV APP 10

**VERTEX HOLDINGS, LLC,**
Plaintiff/Appellee,

v.

**James CRANKE, II and Hope Cranke, husband and wife; and Steve A. Rush, Defendants/Appellants,**

Waldo Bales and Cecille Bales, husband and wife; and The Board of County Commissioners of Delaware County, Oklahoma, Defendants.

No. 104,815.

Court of Civil Appeals of Oklahoma, Division No. 3.

July 31, 2008.

Rehearing Denied Sept. 30, 2008.

Certiorari Denied Jan. 20, 2009.

Leonard M. Logan, IV, Donna L. Smith, Logan & Lowry, LLP, Vinita, OK, for Plaintiff/Appellee.

Kort A. Besore, Harris, McMahan, Peters, Thompson, & Stall, P.C., Tulsa, OK, for Defendants/Appellants.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Defendants/Appellants James Cranke, II, Hope Cranke, and Steve A. Rush (collectively, Appellants) appeal the trial court's judgment granting Plaintiff/Appellee Vertex Holdings, LLC a perpetual easement of necessity over certain real property, awarding damages to Appellants, and awarding attorney fees to Vertex. The trial court erred in awarding a perpetual easement of necessity where the essential elements were not supported by the evidence. We reverse the trial court's perpetual easement award as well as the awards of damages and attorney fees. We remand for reconsideration of Appellants' claim for injunctive relief.

¶ 2 In its Petition, Vertex alleged that it was the owner of Lots 100 and 108 in the Honeymoon Heights subdivision in Delaware County.[1] Vertex had entered a written contract to purchase Lot 97 in the same subdivision, contingent on Vertex obtaining necessary easements to install an ODEQ-approved sewer system and connect it to the existing home on Lot 97 before October 31, 2006. The Crankes owned Lots 98 and 99, and Rush owned Lots 101 and 102 in the same subdivision. These lots all faced a street named Moonlight Circle.

---

1. Honeymoon Heights Unit I is a platted subdivision in the SE/4 of SE/4 of Sec. 5–23N–22E in Delaware County. Honeymoon Heights is not located within a municipality. The plat was recorded in 1958 and it dedicated the streets in the subdivision to public use and provided that all the lots are subject to easements for public utilities.

¶ 3 For its first cause of action, Vertex sought a judgment declaring its right to use the north side of Moonlight Circle to install and operate two underground sewage transmission lines to transfer sewage from Lot 97 to Lot 108,[2] where a septic system and lateral lines would safely dispose of the waste. Vertex claimed that in order to use the house on Lot 97, it was necessary to install, with the knowledge and consent of the Delaware County Commissioners, two 2 inch sewage transmission lines "4 feet South of the North side of Moonlight Circle between Lots 97 and 104, and 3 feet below the surface grade of the same, . . . ."[3] Vertex asked for judgment declaring that the installation of the lines was lawful and did not constitute a trespass or unauthorized use or interference with Appellants' property.

¶ 4 Vertex's alternative cause of action was for an easement. Vertex asserted that if the trial court found that the sewage lines constituted a trespass, then the court should grant Vertex a perpetual easement of necessity for the sewage lines only.

¶ 5 Defendants Waldo and Cecilia Bales filed their Disclaimer of Interest May 3, 2006. On June 5, 2006, Defendant Board of County Commissioners of Delaware County filed its Amended Disclaimer of Interest, in which it disclaimed any interest in this case.[4]

¶ 6 Appellants filed their Answer and Counterclaim May 11, 2006. They asserted that a declaratory judgment was not proper because Vertex had installed the sewage lines in a clandestine manner and through misrepresentation. Appellants claimed that Vertex's sewer lines constituted a trespass on their land and that Vertex filed its Petition to avoid paying damages for its trespass. Appellants denied the County accepted the dedication of the roads in Honeymoon Heights and Appellants averred the County treated the roads as private.

¶ 7 As to Vertex's alternative cause of action for an easement, Appellants argued that Vertex had not finalized the purchase of Lot 97 and therefore could not claim necessity of egress and ingress. Appellants also asserted that Vertex had no private right to condemn an easement on their property.

¶ 8 The Crankes asserted that the installation of the sewer lines caused flooding and erosion on their property. In their counterclaim, Appellants asserted causes of action for trespass, damage to property, and an injunction ordering Vertex to remove the sewer lines.

¶ 9 Trial was held August 21, 2006. At the conclusion of Vertex's case, Appellants unsuccessfully demurred, then rested without presenting any witnesses. The trial court ruled in favor of Vertex. The court found that the street in question had been dedicated to public use and was maintained by the County, that the sewer lines at issue were necessary to remove waste from the home on Lot 97, that all parties (except for the County Board of Commissioners) acquired their lots by conveyances referencing the recorded plat of Honeymoon Heights, and that Appellants failed to present any evidence to support their claim that the road was private. The court further found that the installation of the sewer lines had no effect on the road or its use, and that there was no evidence of any damage or loss sustained by Appellants,

2. The size of the house on Lot 97 left no room for a septic system on that lot. The record reveals that a previous owner of Lot 97 built a home on the lot which extended to the lot lines. The size of the house had led to at least one other lawsuit. The house was owned by a bank at the time Vertex contracted to purchase it.

3. Appellants' lots bordered the north side of Moonlight Circle. Vertex asserted the sewage lines it had installed did not interfere with, inconvenience, or endanger the public, and the lines were constructed, maintained, and operated in compliance with all local, state, and federal environmental and public health rules, regulations, and laws.

4. The County filed its Conditional Disclaimer of Interest May 23, 2006. The County consented to the installation and use of the sewer lines, "having determined that the same are in compliance with all pertinent rules and relations pertaining thereto" and having determined that the use of the lines "in no way impairs, impedes, or interferes with the use of said thoroughfare by the public; . . . ." The County conditioned its Disclaimer on the rights of Vertex and its successors always being subordinate to the County's right to the unimpaired use of the street by the public.

while there was evidence that without the sewer line, the home on Lot 97 would have "markedly reduced value." The trial court granted Vertex a perpetual easement for the sewer lines, with certain restrictions. The court found Appellants had not sustained any damages and dismissed their counterclaim.

¶ 10 Appellants then sought reconsideration or a new trial. The court granted "further hearing" limited to "the amount of damages/just compensation" to which Appellants were entitled to receive based on the imposition of the perpetual easement. The hearing on damages was held May 21, 2007. The trial court awarded $2,000 to the Crankes and the same amount to Rush.

¶ 11 Vertex then sought an award of attorney fees, based on its claim that it was the prevailing party in Appellants' counterclaim for damage to real property, citing 12 O.S. 2001 § 940. Vertex also claimed it was entitled to attorney fees because the trial court denied Appellants' request for an injunction, citing 12 O.S.2001 § 1392. Appellants objected to the attorney fees request, arguing that although the court granted the perpetual easement to Vertex, the court also awarded Appellants damages for the injury to their property.

¶ 12 Appellants also sought an award of attorney fees, arguing that the perpetual easement was a taking of their land by condemnation for which the compensation awarded, $2,000, was more than 10% above the compensation Vertex had offered, and that Appellants were therefore entitled to an award of attorney fees under 27 O.S.2001 § 11. Vertex responded that the court set the amount of compensation based on equity rather than under the statutory eminent domain procedures, and that therefore the attorney fees provision of the eminent domain statutes was inapplicable.

¶ 13 The trial court entered its Order on attorney fees September 24, 2007. The trial court found that Vertex prevailed on its alternative claim for a perpetual easement, and that Appellants did not prevail on any of their claims. The court found "that Vertex should be awarded its reasonable and necessary attorney fees in defending [Appellants'] request for a permanent injunction and for removal of the sewer lines at issue." The court awarded Vertex $9,408.75 in attorney fees and $811.72 as costs. The court denied Appellants' claim for attorney fees.

¶ 14 Appellants' first two claims on appeal are that the placement of the sewer lines under the road without permission constitutes an intentional trespass, and that as a result, Appellants are entitled to an injunction directing Vertex to remove the lines. Appellants assert that two paragraphs in the judgment establish that the sewer line is a trespass:

19. That based on the foregoing, the Court further finds that Moonlight Circle is a public road by means of an implied or common-law dedication[.] *Whitaker v. Town of Tipton,* [1966 OK 228, 426 P.2d 336, 338].

20. That such an implied dedication grants to the governmental body an easement only. *Town of Reydon v. Anderson,* [1982 OK 92, 649 P.2d 541, 543]. Thus the owners of the adjoining lots own the fee interest beneath the roadway of Moonlight Circle.

Appellants argue that these paragraphs establish that the sewer pipes constitute a trespass because Appellants, as owners of adjoining lots, owned the fee interest beneath the roadway and the sewer pipes were placed on Appellants' property without permission.

■ ¶ 15 Although the trial court did not label Vertex's conduct a trespass, the evidence and the court's findings meet the definition of a trespass. A trespass is the actual physical invasion of the property of another without permission. *Frank v. Mayberry,* 1999 OK 63, 985 P.2d 773; *Fairlawn Cemetery Ass'n v. First Presbyterian Church, U.S.A. of Oklahoma City,* 1972 OK 66, 496 P.2d 1185, 1187. An owner of land bound by a highway is presumed to own the property to the center of the road, unless the contrary is shown. 69 O.S.2001 § 1202. A road is generally only an easement for public use while abutting landowners have a fee interest to the center of the road, burdened by the easement. *Haworth v. Jantzen,* 2006 OK 35, ¶ 12, 172 P.3d 193, citing *Town of Reydon v. Anderson,* 1982 OK 92, ¶ 12, 649

P.2d 541 and *Bd. of Trustees of Town of Taloga v. Hadson Ohio Oil Co.*, 1978 OK 16, ¶ 13, 574 P.2d 1038. In *Town of Reydon*, the court explained that where a plat dedicates a street to public use, only an easement is conveyed and the fee simple interest remains in the abutting landowners, absent evidence rebutting the statutory presumption. 649 P.2d at 544.

■ ¶ 16 In this case, the trial court attempted to remedy the continuing trespass by granting Vertex a perpetual easement of necessity for the sewer pipes. However, neither Vertex nor the trial court attempted to comply with the statutory procedures for private condemnation of a private way of necessity. See *Jones v. Ransom*, 2008 OK CIV APP 44, 184 P.3d 561 (*cert. denied*) for analysis of the statutory private condemnation procedures. Instead, the trial court declared its intent to find an equitable solution to the dispute.

■ ¶ 17 An easement of necessity requires proof of common ownership of the dominant and servient estates in the past, and a lack of access to the dominant parcel without the easement over the servient estate after division of the property. *DeWitt v. Cavender*, 1994 OK CIV APP 93, 878 P.2d 1077, 1079; *Jones v. Weiss*, 1977 OK 188, 570 P.2d 948, 949–950; 28A C.J.S., Easements, § 111.

¶ 18 In this case, while common ownership may be assumed to have occurred prior to the subdivision of Honeymoon Heights, Vertex did not have an ownership interest because it had only a contingent purchase contract for Lot 97, the would-be dominant estate. Additionally, the need for access did not arise at the time the property was divided, but occurred years later when the offending house was built on Lot 97. An easement by necessity is implied where a landlocked portion of land is sold-the landlocked condition occurs at the time the property is divided and conveyed. "Since an easement implied by necessity arises simultaneously with the severing conveyance and because of the circumstances then existing, it may not arise from circumstances occurring subsequent to the conveyance." 28A C.J.S., Easements § 106 (citations omitted). The purpose of an easement of necessity is clearly not shown by the facts of this case. At the time the property was subdivided there was no necessity for an easement for a sewer line and nothing about the severance of the property gave rise to the necessity.[5]

■ ¶ 19 The elements for an easement by necessity are not shown by the record in this case. However, the roadway easement included in the dedication of the streets in Honeymoon Heights included a statutory easement for public utilities pursuant to both the plat and 69 O.S.2001 § 1401.[6] And we have noted above that the County Commissioners disclaimed any interest in this case. We consider whether the County may have

---

5. Courts in other states have found that an easement of necessity may exist for access to utilities. See *Smith v. Heissinger*, 319 Ill.App.3d 150, 155, 253 Ill.Dec. 543, 745 N.E.2d 666 (2001) (easement by necessity is not limited to ingress and egress only, but can exist for access to sewer lines, catch basins, and water supply so as to further the public policy favoring the full use of land); *Brown v. Miller*, 140 Idaho 439, 443, 95 P.3d 57 (2004) (easement by necessity "reasonably includes utilities for a single family residence"); *Cline v. Richardson*, 526 N.W.2d 166, 169 (Iowa App.1994) (easement for ingress and egress includes a right to install utilities); *Morrell v. Rice*, 622 A.2d 1156, 1160 (Me.1993) ("An easement created by necessity can include not only the right of entry and egress, but also the right to make use of the easement for installation of utilities, essential for most uses to which property may reasonably be put in these times.");

*United States v. 176.10 Acres of Land*, 558 F.Supp. 1379, 1381–1382 (D.Mass.1983) (easement by necessity includes the right to install utilities); *Huggins v. Wright*, 774 So.2d 408, 412 (Miss.2000) (providing easement by necessity for ingress and egress and for utilities). In each of those cases, the essential element of necessity for the easement (at least for ingress and egress) at the time of severance was shown.

6. That section provides, in part:

   A. Any public utility, or cable television system, not otherwise authorized to do so, lawfully operating or doing business in the State of Oklahoma shall have the right to use the public roads and highways of this state, including the right-of-way and all easements pertaining thereto, as provided for in this section.

had authority to allow Vertex to use the utility easement under the roadway. Section 1401(B) includes the following language:

> B. The use of the public roads and highways by such public utility or cable television system shall be for the purpose of erecting poles and posts, ... and laying pipes and conduits under the surface thereof. All poles, wires, fixtures, pipes and conduits shall be erected, placed, adjusted or laid and maintained only after obtaining the consent pursuant to rules promulgated by the Department of Transportation as to the state highway system, and the boards of county commissioners of the various counties as to roads and highways under their jurisdiction.... Provided, further, that *the boards of county commissioners may grant to any citizen the right to lay pipes and conduits under the surface of any road or highway under their jurisdiction, subject to such rules, regulations and conditions as shall be prescribed by the board of county commissioners.* Nothing in this section shall be construed to limit any rights granted by other provisions of law....

(Emphasis added). The emphasized language appears to allow the County Commissioners to grant Vertex the right to install the sewer pipes under the road. However, an opinion of the Oklahoma Attorney General has construed that language to require the permission of abutting landowners because they own the fee interest under the roadway.

¶ 20 In 14 Okl. Op. Atty. Gen. 1, Okl. A.G. Opin. No. 82–1 (Jan. 27, 1982), the Attorney General answered the question whether a board of county commissioners may permit a private citizen to place a salt water disposal pipeline under a section line road right of way. The opinion noted that so long as the pipeline was properly installed so as not to obstruct the roadway, the county commissioners had authority under § 1401(B) to permit a private citizen to install a pipeline under a public road. The opinion then addressed whether additionally the consent of the abutting landowner was necessary, despite the lack of any such requirement in the language of § 1401. The opinion noted the purpose of roadway easements is to serve the public for travel and public utilities. The opinion recognized that uses beyond those purposes may constitute an additional servitude requiring consent of the landowner as well as compensation, citing *Nazworthy v. Illinois Oil Co.*, 1936 OK 150, 54 P.2d 642, 176 Okla. 37. The Attorney General distinguished a pipeline owned by a private citizen not serving a public interest and noted Article II, § 23 of the Oklahoma Constitution, which provides that "(n)o private property shall be taken or damaged for private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, or for drains and ditches across lands of others for agricultural, mining, or sanitary purposes, in such manner as may be prescribed by law."[7] The opinion concluded that despite the language of § 1401, the use of a roadway easement by a private citizen for a private purpose is an additional servitude beyond the public use easement and therefore requires the consent of the abutting landowners and compensation.[8]

¶ 21 Attorney General opinions are persuasive authority. *National Cowboy Hall of Fame & Western Heritage Ctr. v. State ex rel. Ok. Human Rights Comm.*, 1978 OK 76,

7. Vertex acknowledged in the attorney fees proceedings that it did not seek private condemnation of a way of necessity pursuant to 27 O.S. 2001 § 6, which provides:
   Any private person, firm or corporation shall have power to exercise the right of eminent domain in like manner as railroad companies for private ways of necessity or for agriculture, mining and sanitary purposes.

8. The Oklahoma Supreme Court has more recently announced that where a private telecommunications company, certified by the Oklahoma Corporation Commission as a telephone services provider, installed fiber optic cable in a public road easement, the installation was for a public purpose and did not impose an additional servitude requiring additional compensation. *Bogart v. CapRock Communications Corp.*, 2003 OK 38, ¶ 10, 69 P.3d 266. This holding suggests that use of a public easement for a private purpose does impose an additional servitude.

579 P.2d 1276; *Panhandle Producers & Royalty Owners Ass'n v. Oklahoma Tax Com'n,* 2007 OK CIV APP 68, ¶ 15, 162 P.3d 960 (*cert. denied,* 552 U.S. 1062, 128 S.Ct. 733, 169 L.Ed.2d 554 (2007)). We are persuaded that while § 1401(B) authorizes counties to grant a private citizen the right to use a public road easement, a private use of such easement is nevertheless an additional servitude requiring consent of and compensation to parties owning the fee interest below the roadway.

¶ 22 The record here shows that Vertex's sewer pipes trespassed on Appellants' land because the pipes were placed without consent. The record also shows that the necessary elements for an easement of necessity do not exist in this case because the necessity did not arise until the house was built on Lot 97 and because at the time the pipes were installed Vertex did not own the dominant estate. Accordingly, the trial court erred in attempting to remedy the trespass by imposing an easement of necessity.

■ ¶ 23 The decision whether to impose an easement is an exercise of the trial court's equitable cognizance and we will affirm such a decision unless it is found to be against the clear weight of the evidence or contrary to law or established principles of equity. *Mooney v. Mooney,* 2003 OK 51, ¶ 27, 70 P.3d 872. The easement imposed here is against the clear weight of the evidence and contrary to law because the essential elements for such a claim are not shown in the record. We therefore reverse the order granting a perpetual easement of necessity to Vertex.

¶ 24 Appellants' next claim on appeal is that even if the proper remedy for the trespass was damages, the amount awarded here was insufficient according to the weight of the evidence. Because we find the trial court erred in imposing an easement of necessity, we reverse the award of compensation for such easement and remand for reconsideration of Appellants' claim for injunctive relief.

¶ 25 Finally, Appellants argue that Vertex was not entitled to an award of attorney fees. The attorney fees order appears to award attorney fees to Vertex solely on the basis of the denial of an injunction.[9] Because we reverse and remand, we likewise vacate the award of prevailing party attorney fees. Appellants also claim entitlement to attorney fees pursuant to 12 O.S.2001 § 940.[10] Appellants may reassert their claims for attorney fees on remand.

**REVERSED AND REMANDED WITH DIRECTIONS.**

MITCHELL, V.C.J., and BELL, J., concur.

---

9. Title 12 O.S.2001 § 1392 provides:

    Unless otherwise provided by special statute, no injunction shall operate until the party obtaining the same shall give an undertaking, with sufficient surety, to be approved by the clerk of the court granting such injunction, in an amount to be fixed by the court or judge allowing the same, to secure the party injured the damages he may sustain, including reasonable attorney's fees, if it be finally decided that the injunction ought not to have been granted. Under this section, if an injunction has been entered and later vacated, then attorney fees may be awarded. Nothing in this section provides for an award of attorney fees where an injunction is denied in the first instance. The award of attorney fees, as well as the bond, compensates the party who suffered by reason of an injunction imposed then later vacated because it ought not to have been granted.

10. Section 940(A) provides:

    A. In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.