Sarabeth THOMPSON, Plaintiff,

v.

CENDANT CORPORATION, Defendant.

No. 99–CV–1060–C.

United States District Court, N.D. Oklahoma.

Feb. 5, 2001.

Mark Lynn Edwards, Stipe Law Firm, McAlester, for Sarabeth Thompson, plaintiffs.

Stuart E Blaugrund, Gardere & Wynne, Dallas, TX, Steven Joseph Adams, Gardere & Wynne LLP, A Scott McDaniel, Joyce Paul Carlson & McDaniel PC, Tulsa, Colin H Tucker, Gardere & Wynne LLP, Tulsa, for Avis Rent–A–Car System, Inc., Cendant Corporation, defendants.

## ORDER

**H. DALE COOK, Senior District Judge.**

Before the Court is the motion for summary judgment filed by Cendant Corporation pursuant to Rule 56 F.R.Cv.P. The defendant contends that there exists no genuine issue of material facts and that it is entitled to summary judgment as a matter of law.

On December 13, 1999, plaintiff Sarabeth Thompson filed the present action against Avis Rent A Car System, Inc.(Avis) and Cendant Corporation (Cendant). The suit was filed under federal question jurisdiction, pursuant to 28 U.S.C. § 1331, and pendent jurisdiction for a state claim. The requested relief arises under the Americans With Disabilities Act (ADA) 42 U.S.C. § 12101, *et. seq.*, Age Discrimination in Employment Act of 1967 (ADEA), as amended 29 U.S.C. § 621 *et. seq.*, and a state law claim for Intentional Infliction of Emotional Distress. On January 31, 2000, the parties stipulated that Avis Rent A Car System, Inc should be dismissed from the lawsuit.

Cendant filed its motion and brief with supporting exhibits and Thompson has filed her response with supporting exhibits. After consideration of the briefs, exhibits, arguments of the parties and applicable law, the Court finds and concludes as follows.

### *Undisputed Statement of Facts*

1. Plaintiff Sarabeth Thompson (Thompson) was hired by Avis on November 9, 1987, as a telephone reservation sales agent. As a sales agent her job was to respond to customer inquiries and coordinate car reservations. Thompson was 50 years old at the time she commenced her employment with Avis.

2. In August 1994, Thompson was diagnosed as suffering from Bell's Palsy, a neurological disorder which causes Thompson's facial muscles to retract, rendering speech difficult or impossible. The facial retractions and impairment can last in duration from a few hours to several days. During these episodes, Thompson describes her physical appearance as "horrible looking." The onset of these retractions is random and unpredictable. The disease is permanent, progressive and chronic.

3. In 1996, Thompson was diagnosed as suffering from fibromyalgia, which is a progressively degenerative disease which impairs muscular coordination and impedes plaintiff's ability to walk.

4. As a reservation sales agent, Thompson was required to know Avis rental policies and procedures and be able to communicate with customers over the telephone in a clear and concise manner.

5. During Thompson's employment with Avis she also worked briefly in corporate accounts placing telephone calls to companies soliciting their business with Avis, and in the cash qualifications department doing credit checks and verifying references. Both these positions required Thompson to communicate by telephone. Over 90 percent of Thompson's work at Avis involved telephone communications.

6. Thompson admits that during her episodes with Bell's Palsy, she could not perform the essential functions of her job as a reservation sales agent and there were no accommodations that her employer could make which would allow Thompson to perform her job as a reservation sales agent.

7. On December 31, 1998, Avis merged with Cendant and Thompson became an employee of Cendant.

8. Cendant's attendance policy provides that an employee is subject to termination if the employee's absences reach/exceed 100 hours in a rolling 12–month period. The 100 hours is in excess of absences accumulated under the Family Medical Leave Act (FMLA).

9. In August 1998, Thompson had used her eligible FMLA absences from work and had incurred 101.25 additional hours of year to date absences.

10. On August 14, 1998, Thompson's supervisor conferred with her, and warned her that her absences were excessive.

11. On August 20, 1998, Thompson was again advised by her supervisor that absences in excess of 100 hours would subject Thompson to termination.

12. On September 8, 1998, Thompson's absences exceeded 100 hours and she was issued a warning and "Final Notice" of excessive absences. On that date, Thompson executed a document acknowledging being advised of 1) actions needed to avoid putting her job in jeopardy, 2) absences of 101.25 hours, and 3) improvements needed to continue employment with Avis.

13. On December 23, 1998, Thompson was again counseled by her supervisor to discuss her absences from work. On that date, Thompson's absences totaled 128.25 hours. Her supervisor "asked her to use extreme caution as she needed to drop below 100 hours as soon as she can."

14. Cendant terminated Thompson on May 3, 1999. As of the date of termination, Thompson had incurred in excess of 200 hours of absences. Cendant's stated reason for termination of Thompson was her excessive absences from work.

15. After termination, Thompson filed for retirement benefits with the Social Security Administration in early May 1999.

16. In May 1999, Thompson applied for admission to a senior citizen disability complex, a federal housing project, where she currently resides. Since termination Thompson has suffered from episodes of fibromyalgia which has rendered her bedfast for periods of up to three months.

17. In October 1999, Thompson applied for a telemarketing position with Collins Street Bakery in Corsicana, Texas. Thompson was not offered the position. Thompson then filed for total disability benefits with the Social Security Administration in October 1999, and was approved for disability payment commencing March 2000.

18. Thompson was 61 years old at the time of her termination. Since termination from Cendant, Thompson has had no further employment.

### Allegations of the Parties

Thompson contends that Cendant terminated her because of her disability. Thompson's claim for disability discrimination rests solely on her affliction with Bell's Palsy; she makes no claim of disability discrimination based on her affliction with fibromyalgia. Thompson contends there is no evidence that her fibromyalgia precluded her from employment with Cendant. Although Thompson admits that she was unable to perform the essential function of her job as a reservation sales agent during her episodes with Bell's Palsy, Thompson contends that Cendant should have reasonably accommodated her disability by providing her with alternative work such as supervising other sales agents, paperwork and filing when she was experiencing episodes of Bell's Palsy. Thompson also contends that Cendant should have reasonably accommodated her by allowing her unpaid absences during a flare up with Bell's Palsy. Thompson further contends that her employer had provided her with accommodations since August 1994, and that suddenly in May 1999, Cendant no longer offered the accommodations and terminated her.[1] Thompson contends that Cendant's termination of her was due to her disability and not due to her absences from work.

In response, Cendant contends that Thompson's employment was terminated pursuant to a legitimate and neutral absence policy which subjects all employees to termination when 100 hours of absence is reached/exceeded. Cendant contends that it allowed Thompson to take intermittent leave under the FMLA, but that her absences far exceeded the threshold for absences allowed under the company's at-

---

**1.** In reference to "employer", Thompson makes no distinction between her past employer, Avis Rent A Car, and her present employer, Cendant Corporation.

tendance policy, separate and apart from available FMLA leave. Cendant contends that it counseled Thompson several times regarding her absences, but she failed to rectify the problem and, as a result, the company terminated her. Alternatively, Cendant contends that there were no reasonable accommodation available to allow Thompson to perform the essential functions of her job as a reservation sales agent.

### Standard of Review

In considering a motion for summary judgment, the Court must view the pleadings and documentary evidence in the light most favorable to the non-moving party. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 527–28 (10th Cir.1994). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) F.R.Cv.P. "A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1034 (10th Cir.1998). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Discussion

#### ADA Claim

■ The ADA prohibits employers from discriminating against qualified individuals with disabilities, because of the disabilities, in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment. *See* 42 U.S.C. § 12112(a). To establish a *prima facie* case of discriminatory discharge under the ADA, the plaintiff must establish that she: 1) is disabled within the meaning of the ADA; 2) qualified, that is, she is still able to perform the essential functions of her job with or without reasonable accommodations (which she must describe); and 3) was fired because of her disability. *See e.g., Pack v. Kmart Corp.,* 166 F.3d 1300, 1303 (10th Cir.1999), *White v. York Int'l Corp.,* 45 F.3d 357, 360–61 (10th Cir.1995), and *Doyal v. Oklahoma Heart, Inc.,* 213 F.3d 492, 495 (10th Cir.2000).

A person is disabled within the meaning of the ADA if the person has a physical or mental impairment that substantially limits one or more major life activity, has a record of such impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(2). In its motion for summary judgment, Cendant concedes that Thompson is disabled within the meaning of the ADA. However, Thompson has not established the second element required for a *prima facie* case under the ADA, namely that she is a "qualified individual" with a disability because she is unable, even with reasonable accommodation, to perform the essential functions of her job as a reservation sales agent. Furthermore, Thompson's *prima facie* case fails for lack of evidence supporting the claim that her termination occurred because of her disability.

■ To be protected under the ADA, a plaintiff must demonstrate that she is a "qualified individual" with a disability. 42 U.S.C. §§ 12111(8). This inquiry is twofold: First, it must be shown that the individual plaintiff could perform the essential functions of her job, i.e., functions that bear more than a marginal relationship to the job at issue. *Milton v. Scrivner,* 53 F.3d 1118, 1123 (10th Cir.1995). Second, if it is shown that the individual plaintiff is not able to perform the essential functions of her job, it must be shown that reasonable accommodations by the

employer would enable her to perform those functions. *Id.*

At Cendant, Thompson was employed as a telephone reservationist; the essential functions of this job included being present at work and communicating on the telephone. The ability to speak clearly and participate in phone conversations were essential functions of the job.[2] Thompson does not allege that she can sufficiently perform the essential functions of her job as a telephone reservationist in Cendant Corporation. In fact, she admits that because of her Bell's Palsy syndrome, she was unable at times to perform her duties. Further, Thompson admitted in her deposition, that there were no reasonable accommodations that would enable her to perform the essential functions of her job as a reservation sales agent during episodes with Bell's Palsy. Disregarding that fact, Thompson claims that the accommodation of light duty filing and unpaid absences from work would enable her to perform other duties.

■ Thompson's argument fails because "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential function of a job." *Milton v. Scrivner,* 53 F.3d at 1124. Job restructuring, although possible, is restricted to only marginal functions and should not encompass any essential duty of the job in question. *See,* 29 C.F.R. § 1630.2(*o*)(2)(ii). To do so would create a new job for the plaintiff, instead of simply facilitating the performance of her job's essential duties. This is not permitted under the ADA. *See, Smith v. Blue Cross Blue Shield of Kan., Inc.,* 102 F.3d 1075, 1076 (10th Cir.1996).

■ It is well settled that regular and reliable attendance is an essential job function in itself, regardless of the duty to be performed. Failure to be present for work disqualifies an employee under the ADA. *See, Waggoner v. Olin Corp.,* 169 F.3d 481, 483 (7th Cir.1999); *Corder v. Lucent Technologies, Inc.,* 162 F.3d 924,

928 (7th Cir.1998); *Nesser v. Trans World Airlines,* 160 F.3d 442 (8th Cir.1998), and *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755 (5th Cir.1996). *See also, Hudson v. MCI Telecom. Corp.,* 87 F.3d 1167, 1168 (10th Cir.1996) (holding that unpaid leave of indefinite duration was not reasonable). In this case, plaintiff's request that Cendant accommodate her by granting unpredictable absence from work is not a reasonable accommodation as required by the ADA.

Thompson's requests for accommodation of light duty filing and extended absence from work would not facilitate the performance of the essential function of interacting with customers as a telephone reservationist. In fact, both of the requested accommodations would have eliminated the essential function of the job of regularly speaking to customers. Semi-permanent light duty filing would significantly alter the job description and would inherently eliminate the essential function of a telephone receptionist. Failure to attend work regularly would also eliminate the essential function, because the employee is not present to perform it. Accordingly, the Court finds that no reasonable accommodation could be made to keep Thompson in her present position.

In *Smith v. Midland Brake, Inc.,* 180 F.3d 1154 (10th Cir.1999) the court held that the preferred option is always an accommodation that keeps the employee in her existing job if that can be reasonably accomplished. However, the court found that Congress saw reassignment, as requested by the plaintiff, to be an option to be considered only after other efforts at accommodation have failed. *Id.* Although reasonable accommodations under the ADA may include reassignment from the employee's current job to a vacant position that he or she desires, in this case Thompson did not request reassignment as an alternative accommodation. *See, Taylor v.*

---

**2.** Evidence of whether a particular duty qualifies as an essential function includes a host of factors, to include employer's judgment, writ-

ten job descriptions, amount of time performing the function, work experience of incumbents in similar jobs. *See* 29 C.F.R § 1630.2

*Principal Financial Group, Inc.,* 93 F.3d 155 (5th Cir.1996) (holding that it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process and an employee's failure to request an accommodation negates the employer's liability of not providing it). *See also,* 29 C.F.R. § 1630.9, App. (1995) ("in general ... it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed"). Thompson does not allege that any such vacancies existed or such job positions were available.

Because Thompson failed to request reassignment to a job that required no verbal communications or consistent attendance, Cendant cannot be held to have violated Thompson's rights by terminating her. Because no requested accommodation would have allowed her to perform this essential function of her job, plaintiff was not a qualified individual with a disability as that term is used in the ADA. There is no genuine issue as to this material fact.

Furthermore, Thompson failed to provide any evidence that Cendant terminated her employment because of her disability. Cendant's stated reason for terminating Thompson was due to the excessive absences from work. As for the termination being pre-textual in nature, plaintiff has offered no evidence to show that the legitimate reason articulated by Cendant was not valid or that the disability was a primary factor of the decision. *See, Butler v. City of Prairie Village, Kansas,* 172 F.3d 736, 748 (10th Cir.1999) (holding that alleged disability must be a determining factor in termination).

The uncontroverted facts show that Thompson exceeded her authorized absences after accounting for FMLA leave. She knew about the company's absence policy and does not argue that it was applied in a discriminatory fashion. The Court need not decide whether this decision was fair or correct, as long as it was the reason for the discharge. *See, Hardy v. S.F. Phosphates Ltd. Co.,* 185 F.3d 1076, 1079–1080 (10th Cir.1999).

■ Thompson argues that Cendant's knowledge that her absences were because of her disability, coupled with the subsequent termination, establishes an inference and a genuine dispute of fact as to whether defendant's proffered reason was pretextual. Conjecture and speculation that discrimination occurred is insufficient to establish a pretext. *See, Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999).

■ The Court finds no genuine issue of material fact as to defendant's articulated reason for termination. Thus, the Court grants summary judgment concerning the ADA claim. *See Anderson,* 181 F.3d at 1178 (holding that to survive a summary judgment motion, plaintiff must at least show there is a genuine issue of material fact as to whether the proffered reason for the discharge is unworthy of belief).

### ADEA Claim

Thompson's second claim was that Cendant terminated her because of her age, in violation of the ADEA. Cendant argues that it is entitled to summary judgment on plaintiff's ADEA claim because plaintiff has set forth no evidence to support her claim of age discrimination.

In her Statement of Disputed Facts, Fact # 6, Thompson alleges:

6. Plaintiff was encouraged to retire and was approached by several supervisors and corporate officers who questioned Plaintiff as to when she was going to retire. Plaintiff was told by her supervisor and another manager that Plaintiff should retire because of her Bell's Palsy and age. Plaintiff planned to retire when she was 62 years old. Plaintiff turned 62 years of age in September 1999, approximately four (4) months after the date of her termination.

Although Thompson proffers this factual allegation, she does not address her claim

of age discrimination in the text of her brief, nor does she respond to Cendant's arguments in support of judgment on Thompson's age discrimination claim. "Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading" Rule 8 F.R.Cv.P Thus, failure to respond to the ADEA cause of action in the summary judgment motion deems the matter confessed.

▮▮▮ Moreover, Thompson's one factual allegation does not present a *prima facie* case of age discrimination. Under the ADEA, an employer cannot "discharge any individual . . . because of such individual's age." *See* 29 U.S.C. § 623(a)(1). For Thompson to establish a claim under the ADEA, she must show that Cendant's decision to fire her was motivated, at least in part by her age. *See, James v. Sears, Roebuck & Co.*, 21 F.3d 989, 992 (10th Cir.1994) (explaining that the plaintiff is not required to show that the employer was motivated only by the plaintiff's age). *See e.g., Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir.1995).

There are two methods for showing that an ADEA defendant held the requisite discriminatory intent. First, the plaintiff may present direct proof of the defendant's discriminatory intent. Thompson has offered no direct evidence showing that Cendant fired her because of her age. Therefore, she must produce circumstantial evidence that indirectly proves Cendant's discriminatory motive in firing her. *See, Jones*, 54 F.3d at 630; and *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir.1995). In this case, Thompson contends that others at work remarked about her potential retirement, and such comments support her claim of age-related firing by Cendant.

Where an ADEA plaintiff presents only circumstantial evidence of discrimination, the Court applies the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973). For a plaintiff to establish a *prima facie* case of age discrimination under the ADEA, the *McDon-*

*nell Douglas Corp.* analysis requires a showing that she was within the protected age group at the time of the discharge; she was doing satisfactory work; she was discharged; and her position was filled by a younger person, or she was treated less favorably than younger employees. *See, Gonzagowski v. Widnall,* 115 F.3d 744, 749 (10th Cir.1997); and *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 529 (10th Cir.1994).

Thompson has failed to show that she was "doing satisfactory work" in that Thompson was unable to perform essential functions of her job as a telephone reservationist, and Thompson exceeded the absences allowed under the company's policy.

▮▮ Although Thompson alleges that the termination was partly due to her age, the Court cannot speculate as to the validity of the reason given. *See, Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 986 (10th Cir.1996) ("The ADEA is not a vehicle for reviewing the propriety of business decisions"). The remarks about the timing of future retirement made by co-workers and supervisors are best characterized as "stray remarks" by a non-decision maker, which are insufficient to state a claim under the ADEA. *Cone,* 14 F.3d at 531.

Thompson offered no evidence to support the last element of a *prima facie* case of age discrimination. Thompson offered no evidence that she was treated differently from younger employees at Cendant, or that after Thompson was terminated she was replaced by a younger employee. Thus, the Court grants summary judgment in favor of the defendant on said claim.

*Intentional Infliction of Emotional Distress Claim*

▮▮▮ As to Thompson's intentional infliction of emotional distress claim, the Court finds, as a matter of law, that Cendant's conduct does not rise to the level of extreme and outrageous conduct under *Eddy v. Brown,* 715 P.2d 74 (Okla.1986). Liability in Oklahoma for intentional infliction claims does not "extend to mere

insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46 comment. *See also, Miller v. Miller,* 956 P.2d 887 (Okla.1998).

In order to establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff is required to show that a *tortfeasor* acted intentionally or recklessly, his conduct was extreme and outrageous, plaintiff actually experienced the emotional trauma, and that the emotional distress was severe. *See, Daemi v. Churches' Fried Chicken. Inc.,* 931 F.2d 1379, 1387 (10th Cir.1991); and *Anderson v. Oklahoma Temporary Services, Inc.,* 925 P.2d 574 (Okla.Ct.App.1996).

In this case, Cendant's actions were reasonable under the circumstances and were supported by a legitimate business policy. Cendant's conduct in terminating Thompson, even in light of her disability and age, cannot be regarded as so extreme and outrageous that it goes beyond the bounds of common decency and is utterly intolerable in civilized society. *See, Brock v. Thompson,* 948 P.2d 279 (Okla.1997); and *Breeden v. League Services Corp.,* 575 P.2d 1374, 1378 (Okla.1978). In fact, for an extended period of time, Cendant counseled Thompson regarding her excessive absences 'and made every effort to bring her into compliance with its absentee policy. Although Thompson alleged that she suffered from a bout of anxiety and high tension, this distress does not rise to the level of such extreme degree that the law must intervene. *See, Eddy v. Brown,* 715 P.2d at 77. Thus, the Court grants summary judgment in favor of Cendant on Thompson's claim for intentional infliction of emotional distress.

### Conclusion

For the reasons stated, the Court hereby grants summary judgment in favor of the defendant, Cendant Corporation, and against the plaintiff, Sarabeth Thompson, on plaintiff's claims brought pursuant to the Americans with Disabilities Act, Age Discrimination in Employment Act, and her state law claim for intentional infliction of emotional distress.